John DOE, Richard Roe, and Paul Poe, Plaintiffs,

v.

Frank J. KELLEY, in his capacity as Attorney General of Michigan, Col. Michael D. Robinson, in his capacity as Director of the Michigan State Police, William Hegarty, in his capacity of Chief of the Grand Rapids, Michigan, Police Department, Walt Sprenger, in his capacity as Chief of the Walker, Michigan, Police Department, Robert W. Smith, in his capacity as Chief of the Sparta, Michigan, Police Department, John Porter, in his capacity as Chief of the Rockford, Michigan, Police Department, Robert Carter, in his capacity as Sheriff of Muskegon County, Marvin Weinrick, in his capacity as Chief of the

Cedar Springs, Michigan, Police Department, Gary Rosema, in his capacity as Chief of the Ottawa County Sheriff's Department and James Dougan, in his capacity as Sheriff of Kent County, Michigan, Defendants.

No. 1:97–CV–203.

United States District Court, W.D. Michigan, Southern Division.

March 28, 1997.

Frank E. Stanley, Frank Stanley, P.C., Grand Rapids, MI, for Plaintiffs.

Margaret A. Nelson, Asst. Atty Gen., Lansing, MI, for Defendants Kelley & Robinson.

G. Douglas Walton, Deputy City Atty., Grand Rapids, MI, for Defendant Hegerty.

Teresa S. Decker, Varnum Riddering Schmidt & Howlett, Grand Rapids, MI, for Defendant Sprenger.

Scott G. Smith, Law, Weathers & Richardson, Grand Rapids, MI, for Defendants Smith & Weinrick.

Joseph A. Fink, Dickinson Wright Moon VanDusen, Lansing, MI, for Defendant Porter.

Stephen C. Corwin, Williams Hughes Corwin & Sininger, L.L.P., Muskegon, MI, for Defendant Carter.

Gregory J. Rappleye, Ottawa County Prosecuting Attorney's Office, Grand Haven, MI, for Defendant Rosema.

## OPINION OF THE COURT ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

McKEAGUE, District Judge.

This case presents constitutional challenges to a recent amendment to Michigan's Sex Offenders Registration Act ("Act"), M.C.L. § 28.721 *et seq.* The Act is Michigan's version of "Megan's Law." Since 1994, every state in the Union has enacted a similar law requiring registration of certain sex

offenders. In 1994, seven-year old Megan Kanka was abducted, molested and strangled near her home in New Jersey. The accused perpetrator was a twice-convicted sex offender, who lived in the neighborhood. The Kanka family and others in the neighborhood had been unaware of the accused's prior history. Legislatures have responded quickly in an attempt to offer protection to the public through sex offender registration laws.

The subject amendment will go into effect on April 1, 1997. It provides public accessibility to information about persons convicted of certain sex offenses. Plaintiffs are three unidentified persons who have been convicted of such offenses and have complied with the registration requirements of the Act. If the amendment goes into effect on April 1, 1997, each plaintiff's name and any alias, address, physical description, birth date and sexual offense of which he has been convicted will be available for inspection upon request at the local state police post, local law enforcement agency or sheriff's department having jurisdiction over the zip code area in which the respective plaintiff resides. In a complaint filed on March 19, 1997, plaintiffs ask the Court under 42 U.S.C. § 1983 to declare retroactive application of the "notification provisions" of the amendment unconstitutional on several grounds, and to enjoin the same. Plaintiffs contend the amendment as applied to them, (1) violates the Ex Post Facto Clause, (2) violates the Double Jeopardy Clause, (3) deprives them of liberty or property without due process, (4) violates their rights to privacy, (5) constitutes cruel and unusual punishment, and (6) constitutes an unlawful bill of attainder. Now before the Court are plaintiffs' motions for leave to proceed anonymously and for preliminary injunction. The Court conducted a hearing on the motions on March 27, 1997, and now issues its ruling.

## I

Plaintiffs have identified themselves simply as John Doe, Richard Roe and Paul Poe. They seek leave to proceed anonymously because disclosure of their identities in this action will allegedly result in the very harm they are trying to prevent through this action.

■ There are recognized exceptions to the general requirement of Fed.R.Civ.P. 10(a) that a complaint include the names of all parties. See *Rowe v. Burton*, 884 F.Supp. 1372, 1385–87 (D.Alaska 1994). In order to determine the appropriateness of such exceptional treatment, the Court is required to inquire into the particular circumstances of the case. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir.1993). On the present record, it is impossible to determine whether plaintiffs' interests warrant leave to proceed anonymously. At the hearing, plaintiffs' counsel offered to provide additional personal information pursuant to a suitable protective order. Accordingly, the Court will require counsel for all parties to collaborate in the preparation of a proposed protective order which shall govern use of personal information to be made available to the Court and defendants in support of plaintiffs' motion. The attendant requirements are set forth in the order accompanying this opinion. In the meantime, plaintiffs' motion for leave to proceed anonymously is taken under advisement.

## II

Plaintiffs' motion for preliminary injunction is evaluated under standards well-settled in the Sixth Circuit. The matter is committed to the Court's discretion based on consideration of four factors:

(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of extraordinary relief; (3.) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction.

*Dayton Area Visually Impaired Persons v. Fisher*, 70 F.3d 1474, 1480 (6th Cir.1995), quoting *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994). These are factors to be balanced, not prerequisites that must be met. *Id.* Thus, the degree of likelihood of success required to support the grant of a prelimi-

nary injunction depends on the strength of the other factors. *Id.*

### III

■ The parties agree that assessment of plaintiffs' likelihood of success on the merits of four of their claims—the ex post facto, double jeopardy, cruel and unusual punishment, and bill of attainder theories—essentially devolves into a determination of one question: whether retroactive application of the notification provisions constitutes "punishment." In the criminal justice context, punishment, generally, is the deliberate imposition, by some agency of the state, of some measure intended to chastise, deter or discipline an offender. *Wilson v. Seiter,* 501 U.S. 294, 300, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1991). However, no universal test for determining whether state action constitutes punishment applies to all of these four constitutional theories. See *United States v. Ursery,* —— U.S. ——, —— – ——, 116 S.Ct. 2135, 2144–49, 135 L.Ed.2d 549 (1996). Yet, for purposes of the present motion, the parties agree, it is appropriate to employ the analytical approach set forth in *Doe v. Pataki,* 940 F.Supp. 603 (S.D.N.Y. 1996). That is, determining whether government action is punishment requires consideration of the totality of circumstances, and particularly (1) legislative intent, (2) design of the legislation, (3) historical treatment of analogous measures, and (4) effects of the legislation. *Id.* at 620; see also *W.P. v. Poritz,* 931 F.Supp. 1199, 1209 (D.N.J.1996) (employing similar approach).

### A. Legislative Intent

■ In contrast with other cases dealing with retroactive application of similar sex offender notification schemes in other states, the present record is devoid of evidence of legislative intent. See e.g., *Doe v. Weld,* 954 F.Supp. 425, 429 (D.Mass.1996); *Doe v. Pataki,* 940 F.Supp. at 621–23; *W.P. v. Poritz,*

931 F.Supp. at 1213. While these courts generally acknowledge that the official purpose of such notification provisions is regulatory or remedial—allowing public access to information so as to better enable prevention of and protection from future predatory offenses—in *Doe v. Pataki,* the New York Assembly debate minutes were deemed strong evidence of punitive intent. Here, on the other hand, based on the present record, what can be known of the Michigan Legislature's intent must be discerned from the design of the amendment.

### B. Design

The subject amendment of the Michigan Sex' Offenders Registration Act requires the Department of State Police ("department") to maintain a computerized data base consisting of a compilation of individuals registered under the Act. M.C.L. § 28.728. Individuals required to be registered are individuals domiciled or temporarily residing in Michigan who have been convicted of any of the "listed offenses" since October 1, 1995, and are incarcerated or on probation or parole for such offense; or were so convicted prior to October 1, 1995, but were incarcerated or on probation or parole for such offense on October 1, 1995. The listed offenses:

— accosting, enticing or soliciting a child for immoral purposes, M.C.L. § 750.145a;

— accosting, enticing or soliciting a child for immoral purposes, second offense, M.C.L. § 750.145b;

— child pornography production, distribution, promotion and possession offenses, M.C.L. § 750.145c;

— disorderly person (indecent or obscene conduct in public place), third or subsequent violation, M.C.L. § 750.167(1)(f);[1]

— indecent exposure, third or subsequent violation, M.C.L. § 750.335a;

---

1. The Court notes a facial ambiguity in the language of § 2(d)(ii)(A) of the Sex Offender Registration Act, M.C.L. § 28.722(d)(ii)(A). It is not immediately clear whether the Legislature intended to include all types of disorderly person offenses under M.C.L. § 750.167 as listed offenses or only that defined at M.C.L.

§ 750.167(1)(f) as indecent or obscene conduct in a public place. Defendant Frank J. Kelley, Attorney General, argues for the latter construction, which the Court concludes, with due regard for the regulatory scheme established by the Act, is the only sensible construction.

— third or subsequent violation of a corresponding local ordinance prohibiting indecent exposure or indecent or obscene conduct in a public place;

— pandering (enticing female to become prostitute), M.C.L. § 750.455;

— first degree criminal sexual conduct, M.C.L. § 750.520b;

— second degree criminal sexual conduct, M.C.L. § 750.520c;

— third degree criminal sexual conduct, M.C.L. § 750.520d;

— fourth degree criminal sexual conduct, M.C.L. § 750.520e; assault with intent to commit criminal sexual conduct, M.C.L. § 750.520g;

— attempt or conspiracy to commit any of the above offenses;

— an offense substantially similar to any of the above described offenses under a law of the United States, any state or any country.

M.C.L. § 750.722(d).

The department is required to index the compiled information numerically by zip code area. Within each zip code area, the compilation must contain the name and aliases, address, physical description, birth date and listed offense of every registered person who resides in that zip code area. M.C.L. § 28.728(2). The department is required to provide this compilation to every department post, local law enforcement agency and sheriff's department in the state, each of which is, in turn, required to make information from the compilation for zip code areas located within its jurisdiction available for public inspection during regular business hours. M.C.L. § 28.730(2). The department is also authorized to make the compilation available to the public through electronic, computerized or other accessible means. M.C.L. § 28.730(3).

On its face, the notification scheme is purely regulatory or remedial. It imposes no requirement on the registered offender, inflicts no suffering, disability or restraint. It does nothing more than create a mechanism for easier public access to compiled information that is otherwise available to the public only through arduous research in criminal court files. If the expressed legislative purpose precipitating enactment of similar laws in other states is any guide, the Michigan Legislature, too, sought to make information available to the citizenry concerning persons residing in their communities who have engaged in sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders, are recognized to be resistant to reformation and deemed to pose potential danger of repeat misconduct. See *Doe v. Weld*, at 429 (notification provisions designed to enable members of the public to protect themselves from danger of repeat sex offenses); *Doe v. Pataki*, 940 F.Supp. at 621 (notification provisions based on perceived danger of recidivism posed by sex offenders and public need for protection); *Roe v. Office of Adult Probation*, 938 F.Supp. 1080, 1085 (D.Conn.1996) (same); *W.P. v. Poritz*, 931 F.Supp. at 1212–13 (same) The information is made available to members of the public so that they might modify their behavior in appropriate and lawful ways to protect themselves and prevent crime. *Id.*

Plaintiffs argue that even assuming these notification provisions were enacted for ostensibly regulatory or remedial purposes, the overbreadth of the above scheme indicates a punitive intent as well. The scheme is said to be overbroad in two ways. First, the compilation made available to the public includes all registered offenders irrespective of the seriousness of the convicted offense and of the risk of recidivism. Second, disclosure of the compiled information is unregulated, permitting inspection by any member of the public irrespective of need to know or risk of harm.

In *W.P. v. Poritz*, 931 F.Supp. at 1212–13, 1217, the court observed in evaluating New Jersey's "Megan's Law," that it includes notification limitations, so that only more serious offenders are included and unnecessary dissemination is minimized. The court concluded this careful tailoring of the notification provisions confirmed that they were not punitive, but were designed to narrowly serve the perceived need, protection. In *Doe v. Pataki*, 940 F.Supp. at 623, the court considered a broader notification scheme and, re-

versing the above reasoning from *W.P. v. Poritz,* surmised that the less narrowly tailored New York notification provisions evidenced punitive intent.

Plaintiffs here rely heavily on this *Pataki* reversal of the *Poritz* reasoning. Yet, the obverse does not *necessarily* follow. In *Pataki,* the court's reasoning may in fact have been justified because it was fundamentally premised upon abundant evidence, in flagrant legislative floor comments, of punitive subjective intent. Here, there is no such evidence. The Michigan scheme is undisputably simpler and broader than those considered in both of the above cases. Yet, even when pressed, plaintiffs have been unable to identify a single reason why the alleged overbreadth of the Michigan notification provisions should rationally be deemed to suggest a punitive purpose, as opposed to what it plainly appears to be, simply a broad protective purpose.

Though broad, the Michigan scheme cannot be said not to be rationally related to its presumed purpose. It permits identification of persons in the community who have been convicted of a serious sexual offense at least once, as well as those who have been convicted of a less serious sexual offense three or more times. With respect to the former category of offender, the perceived risk of danger justifying notification is supported by growing evidence of relatively high recidivism rates recognized in the above caselaw. With respect to the latter category, the perceived risk is supported by the offender's own history of repetitive criminal conduct. The Court is in no position, based on the present record, to contest legislative judgment in this regard.

Moreover, even if the Court were to recognize that the notification provisions may serve as a deterrant to future criminal activity—a traditionally recognized punitive purpose—such a finding would not necessarily undermine the scheme's primary regulatory or remedial purpose. See *Poritz,* 931 F.Supp. at 1214, *citing Ursery,* —— U.S. at ——, 116 S.Ct. at 2149, and *Artway v. Attorney General,* 81 F.3d 1235, 1263 (3rd Cir. 1996), (an incidental or complementary deterrent purpose does not render remedial

scheme punitive); *Roe v. Adult Probation,* 938 F.Supp. at 1089–90, citing *United States v. Halper,* 490 U.S. 435, 448, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989), (remedial sanction will only be held punitive if it can only be explained as also serving either retributive or deterrent purposes).

In sum, the Court finds nothing in the challenged amendment's design that indicates punitive purpose.

### C. Historical Treatment

Consistent with the court's opinion in *Pataki,* 940 F.Supp. at 624–26, plaintiffs argue the notification provisions are modern-day equivalents of branding, shaming or banishment. While it is certainly appropriate to consider the purposes for and manner of application of similar antecedent sanctions, *Pataki's* analysis of historical treatment is flawed, confused by comparison of perceived ultimate *effects,* rather than the state imposed sanctions themselves. In the analytic approach distilled in *Pataki* and here employed by this Court, effects are properly considered elsewhere. The "appropriate concern in a historical inquiry is the nature of the measure itself." *Artway,* 81 F.3d at 1257; *Poritz,* 931 F.Supp. at 1215.

As observed *supra,* the instant amendment does nothing more than provide for compilation of and public accessibility to information that is already a matter of public record. Unlike historical uses of branding, shaming and banishment, the notification provisions do not affirmatively impose any suffering, restraint or obligation upon the offender. The notification provisions themselves do not touch the offender at all. While branding, shaming and banishment certainly impose punishment, providing public access to public information does not. See *Poritz,* 931 F.Supp. at 1216–17. And while public notification may ultimately result in opprobrium and ostracism similar to those caused by these historical sanctions, such effects are clearly not so inevitable as to be deemed to have been imposed by the law itself. *Id.*

This Court agrees with the *Poritz* assessment that the subject notification scheme has no identical historical antecedent. 931

F.Supp. at 1215. Perhaps the best, though imperfect, analogue is a governmental warning of the presence of dangerous persons. However, warnings have not been understood as imposing punishment. *Id.* at 1217.

The Court thus remains unpersuaded that a historical analysis offers support for plaintiffs' contention that the amendment is punitive.

## D. Effects

Plaintiffs correctly argue the effects of a state imposed sanction should be considered in determining whether it serves a punitive purpose. In support of their present motion for preliminary injunctive relief, however, they offer no evidence of the real or likely effects *upon them* of public access to compiled information.[2] Instead, they rely almost exclusively on the recitation of examples of abuses of information in several states set forth in Pataki. 940 F.Supp. at 608–611. The Court does not question the accuracy of the reported experiences. Neither does the Court condone the harsh treatment that has been visited on some offenders. Yet, reference to these experiences is insufficient in the present context to materially support plaintiffs' claims for several reasons.

First, the anecdotal "evidence" does not speak directly to effects the present plaintiffs are likely to suffer. See *Doe v. Weld*, at 430 (noting failure of plaintiff, who has burden of proof, to show that disclosure will have "substantial, tangible punitive effects").

██ Second, the effects upon which plaintiffs rely—anecdotal evidence of others' experiences of harassment, assault, job loss, eviction and dislocation—are effects that proceed only indirectly from public access to information. This connection has been deemed strong enough by some courts. See *Pataki*, 940 F.Supp. at 626–28; *Roe v. Office of Adult Probation*, 938 F.Supp. at 1092–93. Yet, both of these courts paid lip service to recognition that the punitive nature of a sanction

should be measured by the legal consequences flowing from the sanction itself. See *Pataki*, 940 F.Supp. at 626–27 (discussion of effects requires consideration of whether *the Act* imposes an affirmative disability or restraint or increases punishment); *Adult Probation*, 938 F.Supp. at 1089 (focus is on legal consequences imposed *by the law*). Both decisions also recognize that, to the extent a law results in "mere disadvantage" or "unpleasant consequences," its effects are not punitive. Yet, both decisions summarily attribute actions taken by independent members of the public in response to released information directly to the notification law.

This Court is unwilling to assign blame for such indirect consequences to the mere compilation and provision of public information under the notification amendment. There is a connection, to be sure. However, as indicated *supra*, punishment in the criminal justice context must be reviewed as the *deliberate imposition by the state* of some measure *intended* to chastise, deter or discipline. Actions taken by members of the public, lawful or not, can hardly be deemed dispositive of whether legislation's purpose is punishment. See *Poritz*, 931 F.Supp. at 1212–13 (misuses of information not to be equated with punishment).

Third, if the Court takes cognizance only of those potential actions of notice recipients that are lawful, the effects that may be visited on plaintiffs will generally be no more serious than many other sanctions previously held not to be punishment. *See Artway*, 81 F.3d at 1266 (listing cases); *Poritz*, 931 F.Supp. at 1218–19 (same).

Fourth, even if anecdotal evidence of potential actions by members of the public were considered effects likely to be visited on plaintiffs as a direct result of the notification provisions, such evidence would be insufficient, in light of the other discussed considerations, to persuade that any punitive effect

---

**2.** In a post-hearing letter from plaintiffs' counsel, he cites two voice mail messages received in his office last night in reaction to publicity of his representation of plaintiffs in this matter. He argues these communications are indicative of the sort of opprobrium to which his clients are likely to be subjected. While such communications are disturbing, they are not so directly caused by the notification scheme as to be cognizable as evidence that the amendment is itself punitive for purposes of constitutional analysis.

overwhelms the primary and legitimate remedial purpose of the law.

For all the foregoing reasons, the Court remains unpersuaded that the subject amendment to Michigan's Sex Offenders Registration Act is punitive. Plaintiffs have thus filed to demonstrate a substantial likelihood of success on the merits of their ex post facto, double jeopardy, cruel and unusual punishment and bill of attainder claims.

### IV

■ The parties have paid considerably less attention in their briefing and arguments to plaintiffs' claims that implementation of the notification provision will violate their due process and privacy rights. The Court remains unpersuaded that plaintiffs have a substantial likelihood of success on the merits of either.

With respect to the due process claim, plaintiffs have failed to show that the amendment threatens to deprive them of any protected liberty or property interest. The amendment, again, does nothing more than compile truthful, public information and make it available. To the extent public use of such information may result in damage to plaintiffs' reputation or may destabilize their employment and other community relations, such effects are purely speculative on the present record and, in any event, would appear to flow most directly from plaintiffs' own convicted misconduct and from private citizens' reaction thereto, and only tangentially from state action.

With respect to the privacy rights claim, plaintiffs have failed to demonstrate the existence of a legitimate privacy interest in preventing compilation and dissemination of truthful information that is already, albeit less conveniently, a matter of public record.

### V

The Court having thus determined that plaintiffs have relatively little likelihood of success on the merits of their claims, their motion for preliminary injunction, to be granted, must be supported by strong showings that they would otherwise be subjected to irreparable harm, that an injunction would not cause substantial harm to others, and that the public interest would be advanced by issuance of the injunction. The required strong showing is lacking.

■ First, plaintiffs have presented practically no evidence that *they* are likely to imminently suffer irreparable harm as a result of implementation of the notification amendment. As explained *supra,* most of the harm they anticipate flows not from the notification provisions, but from their criminal past when exposed to public view in light of current information concerning sex offender recidivism rates.

Second, there is no evidence that issuance of an injunction would result in probability of harm to any identified third persons.

Third, issuance of an injunction that would frustrate legislative will, expressed in legislation that enjoys a presumption of constitutionality, can hardly be deemed to advance the public interest. On the contrary, it is undisputed that implementation of the notification provisions will enable members of the public to take legitimate and effective actions to protect themselves and prevent future crime.

### VI

In conclusion, the Court holds, in the exercise of its discretion, considering the totality of the circumstances presented in these necessarily expedited proceedings, that plaintiffs are not entitled to preliminary injunctive relief. An order consistent with this opinion shall issue forthwith.

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED** that plaintiffs' motion for a preliminary injunction restraining retroactive application of Michigan's amended Sex Offenders Registration Act's notification provisions is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs shall, in cooperation with defendants, fashion an appropriate protective order, under which personal information may be sub-

mitted to the Court in support of their motion for leave to proceed anonymously, and submit the same for the Court's approval not later than April 9, 1997. Upon approval and issuance of the protective order, the Court shall establish a supplemental briefing schedule respecting the motion for leave to proceed anonymously, which motion remains under advisement.