PEOPLE v PENNINGTON

Docket No. 211712. Submitted January 12, 2000, at Lansing. Decided
March 3, 2000, at 9:35 A.M.

James Pennington, Sr., pleaded guilty in the Jackson Circuit Court to
one count of first-degree criminal sexual conduct and one count of
second-degree criminal sexual conduct and was sentenced in 1993
to concurrent terms of imprisonment of fifteen to twenty-five years
and five to fifteen years. The defendant appealed as of right, but
the appeal was dismissed by stipulation of the parties. In 1997, the
defendant moved in the circuit court for relief from the judgment
of sentence pursuant to MCR 6.500 et seq., raising, among other
issues, the claim that the need for him to comply with the provi-
sions of the Sex Offenders Registration Act, MCL 28.721 et seq.;
MSA 4.475(1) et seq., which was enacted and took effect after he
had been sentenced, had the effect of lengthening his sentence and,
accordingly, violated the Ex Post Facto Clauses of the United
States and Michigan Constitutions. The circuit court, Alexander C.
Perlos, J., granted the defendant's motion insofar as it related to
certain inaccuracies in the presentence report and ordered the
amendment of the presentence report, but denied the motion inso-
far as it sought resentencing, finding that the provisions of the Sex
Offenders Registration Act did not violate the Ex Post Facto
Clauses and that the defendant had not shown the good cause and
actual prejudice necessary for postappeal relief under MCR
6.508(D)(3). The defendant appealed by leave granted.

The Court of Appeals held:

1. The Ex Post Facto Clauses of the United States and Michigan
Constitutions are intended to secure substantial personal rights
against arbitrary and oppressive legislation and are not intended to
limit legislative control of remedies and procedures that do not
affect matters of substance. Where a statute affects the prosecution
or disposition of criminal cases involving crimes committed before
the date it becomes effective, the statute violates the Ex Post Facto
Clause if it makes punishable that which had not been punishable,
makes an act a more serious criminal offense, increases the punish-
ment, or allows the prosecution to convict on less evidence.

2. The defendant's assertion that the enactment of the Sex Offenders Registration Act results in an ex post facto increase in his punishment is without merit, because that assertion is based on the incorrect premise that the legislative purpose of the registration and public disclosure provisions of the act was to punish sexual offenders. The clear purpose of the act is to protect the public by providing information concerning the possibility that a potential sexual predator may be living nearby. The purpose of the act was not to punish the sexual offender, and any negative effects that may result from the dissemination of that information cannot be regarded as punishment.

3. Because the circuit court ordered the amendment of the presentence report by the deletion of the information challenged by the defendant, the defendant's appellate claim regarding that matter is moot.

4. With respect to the remaining issues raised below and on appeal, the defendant failed to meet his burden under MCR 6.508(D) of demonstrating both good cause for his prior failure to raise those issues and actual prejudice.

Affirmed.

CRIMINAL LAW — SEX OFFENDERS REGISTRATION ACT — EX POST FACTO LAWS — PUNISHMENT.

The registration and public disclosure provisions of the Sex Offenders Registration Act does not result in an ex post facto increase in the sentence of a sexual offender who was convicted and sentenced before the enactment of that act; the purpose of the Sex Offenders Registration Act is to protect the public, not to punish sex offenders (MCL 28.721 *et seq.*; MSA 4.475[1] *et seq.*).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

James Pennington, Sr., in propria persona.

Before: WHITBECK, P.J., and HOEKSTRA and OWENS, JJ.

PER CURIAM. Defendant appeals by leave granted a circuit court order denying his motion for relief from judgment. We affirm.

Defendant pleaded guilty to one count of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and one count of second-degree criminal sexual conduct, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). The circuit court sentenced him to concurrent terms of imprisonment of fifteen to twenty-five years for the first-degree conviction and five to fifteen years for the second-degree conviction. Following his sentencing in 1993, defendant appealed as of right. However, within months the appeal was dismissed pursuant to a stipulation by both parties.

In 1997, defendant moved in the circuit court for relief from judgment pursuant to MCR 6.500 *et seq.*, raising several issues. Addressing this motion, the circuit court first determined that defendant's claim of inaccuracies in the presentence report were valid and indicated that the report would be amended to reflect that ruling. With regard to defendant's claim that requiring him to comply with the Sex Offenders Registration Act, MCL 28.721 *et seq.*; MSA 4.475(1) *et seq.*, although he was convicted before the act was in place, violated the Ex Post Facto Clauses of the Michigan and United States Constitutions, the circuit court denied defendant relief and attached one of its previous opinions explaining its reasoning. Further, with regard to defendant's other claims, the court held that defendant failed to show the "good cause" and "actual prejudice" that MCR 6.508(D)(3)(a) and (b) require for postappeal relief. Following the circuit court's decision denying the remaining claims in the motion, defendant filed an application for leave to appeal with this Court. MCR 6.509, 7.205. This Court granted leave to appeal, and now we affirm.

In 1994, the Michigan Legislature enacted the Sex Offenders Registration Act, which requires convicted sex offenders to register with the local law enforcement agency. MCL 28.723; MSA 4.475(3). Our Legislature later amended the act by including public notification provisions, MCL 28.730(2), (3); MSA 4.475(10)(2), (3), which allow persons living within the same zip code as a registered sex offender to access information about the offender, such as the offender's name, address, and physical description and the offense involved. MCL 28.728(2); MSA 4.475(8)(2).

Defendant argues on appeal that Michigan's Sex Offenders Registration Act, which became effective years after defendant was sentenced, cannot be applied retroactively because the act violates the constitutional ban on ex post facto laws.[1] Specifically, defendant contends that the registration and disclosure requirements of the act increase punishment, which the sentencing court had no way of considering when imposing defendant's sentence. We disagree. We review constitutional issues de novo. *People v McRunels*, 237 Mich App 168, 171; 603 NW2d 95 (1999).

---

[1] In his statement of questions presented, defendant does not indicate whether he relies on the Ex Post Facto Clause of the federal or state constitution. According to the Michigan Supreme Court, "[t]he United States Supreme Court has consistently held that the Ex Post Facto Clause, US Const, art I, § 10, cl 1, was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit legislative control of remedies and procedure that do not affect matters of substance." *People v Russo*, 439 Mich 584, 592; 487 NW2d 698 (1992). Likewise, the Michigan Ex Post Facto Clause, Const 1963, art 1, § 10, serves the same purpose. *Riley v Parole Bd*, 216 Mich App 242, 244; 548 NW2d 686 (1996). Thus, our discussion of the constitutionality of the statute in question applies to both the federal and state constitutions.

"The Ex Post Facto Clause was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit legislative control of remedies and procedures that do not affect matters of substance." *Id.* at 175. Where a statute affects the prosecution or disposition of criminal cases involving crimes committed before its effective date, it violates the Ex Post Facto Clause if it " '(1) makes punishable that which was not, (2) makes an act a more serious criminal offense, (3) *increases the punishment*, or (4) allows the prosecution to convict on less evidence.' " *Id.*, quoting *Riley v Parole Bd*, 216 Mich App 242, 244; 548 NW2d 686 (1996) (emphasis supplied). In the present case, defendant suggests that the act in question increases punishment.

With regard to the registration requirement of the act, defendant argues that registering will subject him to humiliation and "make entry in the community and any hope of becoming a productive member of society [after serving his sentence] virtually impossible." Defendant further argues that public disclosure of the offender's name and address is unconscionable because it will inflame the passions of members of the public who, regardless of the severity of the offender's crime, the prison sentence served, and the successful completion of therapy, do not believe that a sex offender can be rehabilitated. Defendant concludes that "[a]ll offenders will be subjected to the same humiliation, retribution and ostracism."[2]

---

[2] In support of his argument, defendant relies in part on *Doe v Pataki*, 940 F Supp 603, 629 (SD NY, 1996), where the court found that retroactive applications of public notification provisions of a New York sex offender registration act violated the Ex Post Facto Clause. We note that *Pataki* has been reversed on point. *Doe v Pataki*, 120 F3d 1263, 1284 (CA 2, 1997) ("[W]e hold that the notification requirements of the [New York

We disagree with defendant's argument that the potential ramifications of complying with the act constitute punishment. In *Lanni v Engler*, 994 F Supp 849, 852-855 (ED Mich, 1998), the federal district court examined Michigan's Sex Offenders Registration Act, concluding that the registration and notification provisions of the act are not punitive. The *Lanni* court explained:·

> Although the Act does not contain an express statement of legislative intent, the implied purpose is plainly regulatory. Neither notification or [sic] registration inflicts suffering, disability, or restraint on the registered sex offender. It does nothing more than create a method for easier public access to compiled information that is otherwise available to the public through tedious research in criminal court files. Like similar laws in other states, the Michigan Act also seeks to provide the local citizenry with information concerning persons residing near them who have been convicted of sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders and the devastating impact that sex crimes have on society, pose a serious threat to society. . . .
>
> The language of section 730 makes clear that the legislature intended the notification provision to prevent future attacks by recidivist sex offenders. The text and structure reveal no intent to punish, but rather only a regulatory purpose. Notification is limited both by the amount of information available and the area in which the information is disseminated. First, the data available for public dissemination is limited to information already available from law enforcement, court, and Department of Corrections records. Mich Comp Laws Ann 15.231 *et seq.* Second, access to the sex offender registry is limited by zip code so that only those living in the same zip code as the sex offender can obtain the information. A law designed to punish a sex offender

---

sex offender registration act] do not constitute punishment for purposes of the Ex Post Facto Clause.").

would not contain these strict limitations on public dissemination.

* * *

. . . Dissemination of information about a person's criminal involvement has always held the potential for negative repercussions for those involved. However, public notification in and of itself, [sic] has never been regarded as punishment when done in furtherance of a legitimate government interest. The registration and notification requirements can be more closely analogized to quarantine notices when public health is endangered by individuals with infectious diseases. Whenever notification is directed to a risk posed by individuals in the community, those individuals can expect to experience some embarrassment and isolation. Nonetheless, it is generally recognized that the state is well within its rights to issue such warnings and the negative effects are not regarded as punishment. . . .

* * *

. . . [T]his Court recognizes that imposition of the registration and notification requirements may deter others from future criminal activity, a traditionally recognized punitive purpose. However, a secondary criminal purpose may not undermine the Act's primary remedial purpose, as deterrence "may serve civil as well as criminal goals." [*Id.* at 853-854 (citations omitted).]

With regard to the Ex Post Facto Clause, the *Lanni* court further found that the statute was designed to protect the public, not punish defendants, and that any effects from notification were reasonable in light of this goal. *Id.* at 854-855. Accordingly, the *Lanni* court concluded that it was not an ex post facto law. *Id.* at 855.

Another federal district court has also found the registration requirement of the act not to be punitive. In *Doe v Kelley*, 961 F Supp 1105 (WD Mich, 1997),

the constitutional challenge was based solely on the amendment of the act adding notification provisions effective April 1, 1997. The court, focusing on whether retroactive application of the statutory notification requirements constitutes punishment, wrote:

> In the criminal justice context, punishment, generally, is the deliberate imposition, by some agency of the state, of some measure intended to chastise, deter or discipline an offender. . . . [D]etermining whether government action is punishment requires consideration of the totality of circumstances, and particularly (1) legislative intent, (2) design of the legislation, (3) historical treatment of analogous measures, and (4) effects of the legislation. . . .
>
> \*      \*      \*
>
> On its face, the notification scheme is purely regulatory or remedial. It imposes no requirement on the registered offender, inflicts no suffering, disability or restraint. It does nothing more than create a mechanism for easier public access to compiled information that is otherwise available to the public only through arduous research in criminal court files. If the expressed legislative purpose precipitating enactment of similar laws in other states is any guide, the Michigan Legislature, too, sought to make information available to the citizenry concerning persons residing in their communities who have engaged in sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders, are recognized to be resistant to reformation and deemed to pose potential danger of repeat misconduct . . . . The information is made available to members of the public so that they might modify their behavior in appropriate and lawful ways to protect themselves and prevent crime. [*Id.* at 1108-1109.]

The court rejected the plaintiffs' argument that the notification provisions are modern-day equivalents of branding, shaming, or banishment, remaining unpersuaded that an historical analysis supports plaintiffs'

contention that the amendment adding public notification provisions to the act is punitive:

> [T]he instant amendment does nothing more than provide for compilation of and public accessibility to information that is already a matter of public record. Unlike historical uses of branding, shaming and banishment, the notification provisions do not affirmatively impose any suffering, restraint or obligation upon the offender. The notification provisions themselves do not touch the offender at all. While branding, shaming and banishment certainly impose punishment, providing public access to public information does not. . . . And while public notification may ultimately result in opprobrium and ostracism similar to those caused by these historical sanctions, such effects are clearly not so inevitable as to be deemed to have been imposed by the law itself. [*Id.* at 1110.]

The *Kelley* court also considered the effects of the act in determining whether the act serves a punitive purpose:

> [T]he effects upon which plaintiffs rely—anecdotal evidence of others' experiences of harassment, assault, job loss, eviction and dislocation—are effects that proceed only indirectly from public access to information. . . .
>
> This Court is unwilling to assign blame for such indirect consequences to the mere compilation and provision of public information under the notification amendment. There is a connection, to be sure. However, . . . punishment in the criminal justice context must be reviewed as the *deliberate imposition by the state* of some measure *intended* to chastise, deter or discipline. Actions taken by members of the public, lawful or not, can hardly be deemed dispositive of whether legislation's purpose is punishment. . . .
>
> *        *        *
>
> . . . [E]ven if anecdotal evidence of potential actions by members of the public were considered effects likely to be visited on plaintiffs as a direct result of the notification pro-

visions, such evidence would be insufficient, in light of the other discussed considerations, to persuade that any punitive effect overwhelms the primary and legitimate remedial purpose of the law. [*Id.* at 1111-1112 (emphasis in original).]

Having weighed the pertinent factors, the *Kelley* court was not persuaded that the notification provisions provided in the amendment were punitive.

We agree with the analyses in both *Lanni, supra,* and *Kelley, supra,*[3] and adopt their reasoning as our own.[4] Thus, we conclude that the legislation in issue, directed at protecting the public and having no punitive purpose, does not violate the prohibition against ex post facto laws. Hence, defendant's argument is without merit.

Defendant also argues that the trial court erred in failing to delete the information in the presentence report that defendant challenged. This claim is moot because the circuit court already granted defendant relief, ordering amendments of the report. See *Ardt v Titan Ins Co,* 233 Mich App 685, 693; 593 NW2d 215 (1999) ("This Court need not address issues that have become moot.").

---

[3] In addition, we note that the Sixth Circuit Court of Appeals addressed the constitutionality of a Tennessee statute with registration and disclosure provisions for sex offenders and concluded that the federal Ex Post Facto Clause is not implicated because "the Act was not intended to punish, and its requirements do not transform the law into punishment." *Cutshall v Sundquist,* 193 F3d 466, 477 (CA 6, 1999).

[4] Previously, this Court in *In re Ayres,* 239 Mich App 8; ___ NW2d ___ (1999), also adopted the analyses in *Lanni, supra,* and *Kelley, supra,* as its own, but in a different context. In *Ayres,* the issue was confined to juveniles, rather than adults, and consequently the public notification provision was not at issue because the respondent, a juvenile offender, is expressly exempted from notification provisions of the act. MCL 28.728(2); MSA 4.475(8)(2), MCL 28.730(2), (3); MSA 4.475(10)(2), (3). With this opinion, we now adopt the reasoning of *Lanni, supra,* and *Kelley, supra,* in the broader context raised by this case.

We do not reach defendant's remaining arguments because he failed to meet his burden under MCR 6.508(D) to demonstrate the necessary good cause for his prior failure to raise the issues presented and actual prejudice. MCR 6.508(D)(3).

Affirmed.