# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

JOCQUE NOLAN,

     Defendant-Appellant.

UNPUBLISHED
October 16, 2018

No. 336848
Chippewa Circuit Court
LC No. 15-001939-FH

Before: SAWYER, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Defendant, Jocque Nolan, appeals as of right his jury trial convictions of two counts of violating the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., MCL 28.729(1). Defendant challenges his convictions on constitutional grounds. We affirm.

Defendant has been required to register under SORA since 2004. He was released from prison on parole for an unrelated offense on June 30, 2015. In August 2015, defendant's parole officer confiscated defendant's cell phone and it was determined that defendant had used the phone to access various electronic communication services, including Skype and Facebook. As a result of defendant's undisclosed use of these services, he was charged with several criminal offenses, including three counts of violating SORA's registration requirements. A jury convicted defendant of two of the three counts of violating SORA, arising from his failure to disclose his Skype and Facebook accounts.

## I. VAGUENESS OF SORA PROVISIONS

Defendant first argues that his convictions should be vacated because the SORA registration requirement that he violated was unconstitutionally vague and therefore void. Defendant also contends that he was denied the effective assistance of counsel because his second trial counsel failed to pursue a previously filed motion to quash on that basis. We disagree.

This Court reviews the constitutionality of a statute de novo. *People v Lockett*, 295 Mich App 165, 174; 814 NW2d 295 (2012). Defendant's related ineffective assistance of counsel claim presents a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App

-1-

659, 667; 739 NW2d 706 (2007). The lower court's findings of fact are reviewed for clear error, while its rulings on questions of constitutional law are reviewed de novo. *Id*. However, because defendant failed to preserve this issue by moving for a new trial or *Ginther*[1] hearing in the lower court, *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009), this Court's review is limited to errors apparent from the record, *Jordan*, 275 Mich App at 667.

Defendant's first claim of error is premised on his contention that he was convicted of violating SORA based upon his noncompliance with MCL 28.727(1)(i), which was deemed unconstitutionally vague in *Doe v Snyder*, 101 F Supp 3d 672 (ED Mich, 2015) (*Doe I*), and *People v Solloway*, 316 Mich App 174; 891 NW2d 255 (2016). In pertinent part, § 7(1)(i) of SORA provides:

> (1) Registration information obtained under this act shall be forwarded to the department[2] in the format the department prescribes. Except as provided in section 5b(3), a $50.00 registration fee shall accompany each original registration. All of the following information shall be obtained or otherwise provided for registration purposes:
>
> * * *
>
> (i) All electronic mail addresses and instant message addresses assigned to the individual or routinely used by the individual and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system. [Citation omitted.]

The prosecution, on the other hand, contends that defendant's convictions arose from his noncompliance with § 5(1)(f), which has not been invalidated by binding precedent, and states:

> (1) An individual required to be registered under this act who is a resident of this state shall report in person and notify the registering authority having jurisdiction where his or her residence or domicile is located immediately after any of the following occur:
>
> * * *
>
> (f) The individual establishes any electronic mail or instant message address, or any other designations used in internet communications or postings.

To the extent that defendant's convictions rested on his violation of § 7(1)(i), he correctly argues that this Court would be compelled by the holding in *Solloway* to vacate his convictions.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] " 'Department' means the department of state police." MCL 28.722(d).

*Solloway*, 316 Mich App at 184-187 (finding that MCL 28.727(1)(h) and (i) were impermissibly vague and vacating the defendant's convictions arising from violating those provisions). However, the felony information concerning the first two counts only indicates that defendant willfully violated SORA by "maintaining a Facebook account" and "maintaining a Skype account," contrary to MCL 28.729(1), which establishes a willful violation of SORA as a felony offense. The judgment of sentence similarly refers only to MCL 28.729, and we did not discover any other filings that explicitly indicate which SORA requirement defendant was alleged to have violated. Nonetheless, we infer from the record that the defendant's conviction arose from his noncompliance with § 5(1)(f) for several reasons.

First, the proofs presented at trial suggest that defendant's SORA violations must have concerned defendant's failure to comply with § 5(1)(f). Section 5(1) identifies events that trigger a registrant's duty to immediately report the occurrence of the event to the applicable authority, while § 7 identifies the information that must generally be provided under SORA. It is undisputed that defendant was required to register since 2004, but there was no evidence presented concerning the frequency with which defendant was required to report. See MCL 28.725a (dictating the frequency and schedule for reporting, based upon the registrant's SORA tier). In the absence of such evidence, it can be inferred that defendant's SORA violation arose from his noncompliance with a provision in § 5(1), which must be reported immediately without regard to when the registrant would otherwise be required to appear before the applicable authority, rather than his failure to disclose accounts that may not have existed when he was last required to report.

Second, certain comments made by the prosecution suggest that it was pursuing SORA violation charges based on defendant's failure to comply with § 5(1)(f). Section 5(1)(f) requires a registrant to notify the appropriate authority "immediately" after "establish[ing] any electronic mail or instant message address, or any other designations used in internet communications or postings." As used in SORA, the term "immediately" means "within 3 business days." MCL 28.722(g). At defendant's preliminary examination, the prosecution indicated that it was required to prove several elements concerning defendant's SORA violation, including that defendant had not reported a change in his e-mail address or social media accounts "within three days . . . ." Defendant likewise referred to constitutionality of the "three[-]day requirement" at the preliminary examination. This reference to the information that must be reported within three days was repeated by the prosecution again during its opening statement and closing argument at trial. Because § 7(1) does not include the term "immediately" in setting forth information that must be provided by the individual registering, the repeated references to a three-day time frame for reporting further supports the prosecution's contention that defendant was prosecuted and convicted for violating the reporting requirement set forth in § 5(1)(f).

The jury instructions provided by the trial court, without objection from defense counsel, similarly reinforce this conclusion. With respect to the SORA violation charges, the trial court instructed:

> To prove this charge, the prosecutor must prove the following elements beyond a reasonable doubt. First, that the defendant has been convicted of unlawful sexual contact, which would require him to provide certain information

for the Sex Offender Registry. And to *immediately* report changes in the registration information to a local police agency when the defendant *establishes* an e-mail account or internet communications with an address or account.

Second, that the defendant *established* an e-mail or internet communications, address, or account. Third, that the defendant failed to notify the Michigan State Police or local police agency in the city where he lived of the change of registry *within three days*. Fourth, that the defendant's failure to register was willful. "Willful" means that the defendant freely chose not to provide notification [of a] change in the registry information. [Emphasis added.]

This instruction mirrors M Crim JI 20.39a, which cites MCL 28.725(1) in its reference guide. The above instruction also repeats terminology that is found in § 5 and absent from § 7, specifically, the requirement that an individual must "immediately" report to the registering authority after he or she "establishes" an e-mail address or other designation used in "internet communications." See MCL 28.725(1)(f).

In light of the above, we can reasonably conclude that defendant was prosecuted for violating § 5(1)(f), rather than § 7(1)(i). Accordingly, the question becomes whether § 5(1)(f) is unconstitutionally vague, such that defendant's conviction for violating that SORA provision must be vacated. As this Court recently explained,

A statute may be determined to be "unconstitutionally vague" when "(1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed or (3) its coverage is overly broad and impinges on First Amendment Freedoms." [*People v Vronko*, 228 Mich App 649, 652; 579 NW2d 138 (1998).] A statute will not be found vague "if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or their generally accepted meaning." *Id*. at 653. [*Solloway*, 316 Mich App at 184-185.]

Plaintiff relies primarily on *Doe I* and *Solloway* in support of his argument regarding this issue. In *Doe I*, a federal district court found that § 7(1)(i) was unconstitutional because it was impermissibly vague. *Doe I*, 101 F Supp 3d at 687-689, 713. In reaching this conclusion, the *Doe I* Court observed that § 7(1)(i) required an individual to report e-mail and instant message addresses and identifiers that were assigned to or "routinely used" by the individual. *Id*. The Court reasoned that the "routinely used" language was "not sufficiently concrete (1) 'to ensure fair notice to the citizenry' or (2) 'to provide standards for enforcement by the police, judges, and juries.' " *Id*. at 688 (citation omitted). Although the district court's holding in *Doe I* itself is not binding, this Court has since adopted the *Doe I* Court's rationale regarding the validity of § 7(1)(i), agreeing that SORA's use of the phrase "routinely used" is too vague to withstand constitutional scrutiny. *Solloway*, 316 Mich App at 184-187.

However, for the reasons set forth above, it is evident that defendant was convicted under MCL 28.729(1) based upon his violation of the requirement in § 5(1)(f), rather than those that

were invalidated in *Doe I* and *Solloway*. Importantly, the "routinely used" language that was problematic in *Doe I* and *Solloway* does not appear in § 5(1)(f). Instead, that section unambiguously requires that an individual who is required to register immediately notify the registering authority when he or she "establishes *any* electronic mail or instant message address, or any other designations used in internet communications or postings." MCL 28.725(1)(f) (emphasis added). In other words, it is the registrant's act of establishing an address or designation that triggers the duty to report, rather than "routine[] use[]" of uncertain regularity or frequency. Given this clarity, § 5(1)(f) does not raise the same concerns that registrants, law enforcement personnel, and the judiciary might be unable to determine when the registrant's duty to report arises. As such, defendant's contention that this Court is obligated to vacate his convictions pursuant to *Solloway* is unpersuasive, and he has not presented any further argument as to why § 5(1)(f) is impermissibly vague.[3]

Defendant also argues that he was denied the effective assistance of counsel when his second trial counsel failed to pursue the motion to quash filed by his first attorney.

As a general rule, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defendant's motion to quash lacked merit because, as discussed above, he was not charged with violating an invalid provision of SORA.

## II. EX POST FACTO CLAUSES

Next, defendant argues that his convictions must be reversed because the reporting requirements concerning e-mail and instant messaging addresses, and other internet designations or identifiers, were not added to SORA until it was amended in 2011. See 2011 PA 18. According to defendant, application of reporting requirements that were not in effect when he was placed on the registry in 2004 violates the constitutional prohibitions against ex post facto laws. We disagree.

Initially, we note that this Court recently rejected the same challenge to the similar provisions in § 7(1)(i). *People v Patton*, ___ Mich App ___; ___ NW2d ___ (No. 341105, issued August 2, 2018). While this reasoning equally applies here, because we conclude that defendant was actually convicted under § 5 rather than § 7, we will nevertheless analyze the issue as well.

---

[3] We recognize that the *Doe I* Court also held that MCL 28.725(1)(f) was invalid on First Amendment grounds because the requirement that a registrant must report required information in person was not narrowly tailored to protect the state's interest in protecting minors and investigating sexual crimes. *Doe I*, 101 F Supp at 704. However, *Doe I* is not binding on this Court, *Solloway*, 316 Mich App at 184, and defendant has not presented a First Amendment argument.

Matters of constitutional law are reviewed de novo. *People v Tucker*, 312 Mich App 645, 651; 879 NW2d 906 (2015). Both the United States and Michigan Constitutions prohibit ex post facto laws. *People v Callon*, 256 Mich App 312, 316; 662 NW2d 501 (2003), citing US Const, art I, § 10 and Const 1963, art 1, § 10. "Both ex post facto clauses are designed to secure substantial personal rights against arbitrary and oppressive legislation and to ensure fair notice that conduct is criminal[.]" *Callon*, 256 Mich App at 317 (citations omitted). Michigan courts apply a two-part inquiry to determine whether a law violates the Ex Post Facto Clauses:

> The court must begin by determining whether the Legislature intended the statute as a criminal punishment or a civil remedy. If the Legislature's intention was to impose a criminal punishment, retroactive application of the law violates the Ex Post Facto Clause and the analysis is over. However, if the Legislature intended to enact a civil remedy, the court must also ascertain whether "the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." Stated another way, even if the text of the statute indicates the Legislature's intent to impose a civil remedy, we must determine whether the statute nevertheless functions as a criminal punishment in application. [*People v Earl*, 495 Mich 33, 38; 845 NW2d 721 (2014) (citations omitted) (alteration in original).]

"The critical question . . . is whether the law changes the legal consequences of acts completed before its effective date." *Callon*, 256 Mich App at 318 (quotation marks and citation omitted).

When the Legislature amended SORA in 2002, it added § 1a, which provides:

> The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger. [MCL 28.721a.]

According to this express statement of intent, the Legislature did not intend SORA to act as a criminal punishment, but rather as a means of assisting in the prevention of "future criminal sexual acts by convicted sex offenders," by monitoring those offenders. *Id*. See also *Earl*, 495 Mich at 42-43 ("[W]here a legislative restriction is an incident of the State's power to protect the health and safety of its citizens, it will be considered as evidencing an intent to exercise that regulatory power, and not a purpose to add to the punishment.") (quotation marks and citation omitted; alteration in original). Even before SORA was amended to include § 1a, this Court found that SORA was "directed at protecting the public and [had] no punitive purpose . . . ." *People v Pennington*, 240 Mich App 188, 197; 610 NW2d 608 (2000), citing *Lanni v Engler*,

994 F Supp 849 (ED Mich, 1998), and *Doe v Kelley*, 961 F Supp 1105 (WD Mich, 1997). The 2011 amendment that added the reporting requirement in § 5(1)(f) did not alter the Legislature's statement of intent. See *People v Temelkoski*, 307 Mich App 241, 260-262; 859 NW2d 743 (2014), rev'd on other grounds 501 Mich 960; 905 NW2d 593 (2018) (finding that "the Legislature intended SORA as a civil remedy to protect the health and welfare of the public" 307 Mich App at 262).

In light of the Legislature's clearly stated intent, we must consider whether the 2011 SORA amendment to § 5 is nonetheless "so punitive either in purpose or effect as to negate [the State's] intention to deem it civil." *Earl*, 495 Mich at 38 (quotation marks and citation omitted) (alteration in original). This Court has previously analyzed this question in *Temelkoski*, 307 Mich App at 262-270. Although the underlying facts involved in *Temelkoski* are distinguishable from those at issue here, the Court's analysis in that case is equally applicable to defendant's ex post facto challenge. The *Temelkoski* Court considered the five factors reviewed by the United States Supreme Court when it reviewed a similar challenge to Alaska's sex offender registration act, Alas Stat 12.63.010 *et seq*., i.e., whether the statutory scheme "(1) 'has been regarded in our history and traditions as a punishment,' (2) 'imposes an affirmative disability or restraint,' (3) 'promotes the traditional aims of punishment,' (4) 'has a rational connection to a nonpunitive purpose,' and (5) 'is excessive with respect to this purpose.' " *Temelkoski*, 307 Mich App at 262, quoting *Smith v Doe*, 538 US 84, 97; 123 S Ct 1140; 155 L Ed 2d 164 (2003).

With respect to the first factor, this Court found that the requirements of SORA, as amended in 2011, are "unlike traditional forms of punishment." *Temelkoski*, 307 Mich App at 264. The Court explained that although a registrant may be exposed to humiliation or public disapproval, it is a collateral consequence of SORA, which is principally geared toward public safety goals. *Id*. at 263-264. Furthermore, § 5(1)(f) in particular does not raise that concern because e-mail and instant messaging addresses are not available to the public. MCL 28.728(3)(e). Further, while there is limited historical treatment of similar statutory schemes, other jurisdictions in recent years have found that "sex offender registration and notification laws are nonpunitive in nature." *Temelkoski*, 307 Mich App at 263. We see no reason to reach a different conclusion with respect to the 2011 amendment to § 5(1)(f).

The second factor also weighs in favor of finding that the 2011 amendment to § 5(1)(f) is nonpunitive. *Id*. at 265-266. In considering whether the 2011 amendment imposes an affirmative disability or restraint, the Court should evaluate "how the effects of the Act are felt by those subject to it." *Id*. at 265 (quotation marks and citation omitted). According to the *Temelkoski* Court,

> SORA " 'inflicts no suffering, disability or restraint.' " *Pennington*, 240 Mich App at 195, quoting *Kelley*, 961 F Supp at 1109. Although [the] defendant certainly experiences adverse effects from being listed on the PSOR [public sex offender registry], these effects stem from the commission of the underlying act, not SORA's registration requirements. While secondary effects may flow indirectly from the PSOR, " 'punishment in the criminal justice context must be reviewed as the *deliberate imposition by the state* of some measure *intended* to chastise, deter or discipline. Actions taken by members of the public, lawful or

not, can hardly be deemed dispositive of whether legislation's purpose is punishment.' " *Pennington*, 240 Mich App at 196, quoting *Kelley*, 961 F Supp at 1111. The central purpose of SORA is not intended to chastise, deter, or discipline; rather, it is a remedial measure meant to protect the health, safety, and welfare of the general public. [*Temelkoski*, 307 Mich App at 266.]

The third factor—whether § 5(1)(f) of SORA, as amended in 2011, promotes the traditional aims of punishment—similarly weighs in favor of finding that it is nonpunitive. As the *Temelkoski* Court succinctly stated, "[w]hile SORA might deter future sexual offenses, that is not the primary purpose of the act and it does not render SORA punitive." *Id*. at 267.

The fourth factor is whether SORA's 2011 amendment to § 5(1)(f) has a rational connection to a nonpunitive purpose. *Id*. at 262. Again, this factor supports the conclusion that it is nonpunitive. SORA was enacted and amended to promote the public health and welfare by protecting against "future criminal sexual acts by convicted sex offenders," MCL 28.721a, which is a legitimate and nonpunitive purpose, *Temelkoski*, 307 Mich App at 267-268.

With respect to the last factor, the *Temelkoski* Court found that SORA's requirements were not excessive with respect to their purpose. *Id*. at 268-270. The Court explained that the registry requirements are reasonably tied to the regulatory purpose of public protection. *Id*. at 269. Although *Temelkoski* focused primarily on the publicly available registry information, the same holds true for the provision with which defendant failed to comply. Section 5(1)(f) requires registrants to report to the applicable authority upon establishing "any electronic mail or instant message address, or any other designations used in internet communications or postings." It goes without saying that the internet and other means of electronic communication are commonly used in planning and committing various crimes that SORA is designed to prevent. See MCL 28.722(s), (u), and (w) (identifying offenses by tier level). See also, e.g., *People v Seadorf*, 322 Mich App 105; 910 NW2d 703 (2017) (defendant convicted under MCL 750.145c(2), based upon downloaded child sexually abusive material); *People v Cervi*, 270 Mich App 603; 717 NW2d 356 (2006) (defendant charged under MCL 750.520d(1)(a) and MCL 750.145c(2) after communicating with undercover officer posing as a 14-year-old female in internet chat room). Given the frequent use of electronic communication in perpetrating sexual offenses, the requirement of § 5(1)(f) is not excessive with respect to its purpose.

In sum, because all five factors set forth in *Temelkoski* and *Smith* weigh in favor of concluding that § 5(1)(f) is nonpunitive, there is no basis to conclude that the effects negate the Legislature's stated intent. As such, it does not impose punishment and therefore does not violate the Ex Post Facto Clauses of the state or federal constitutions. Defendant's reliance on *Doe v Snyder*, 834 F3d 696 (CA 6, 2016) (*Doe II*), is misplaced because decisions of lower federal courts are not precedentially binding, *Solloway*, 316 Mich App at 184, and the analysis set forth in *Doe II* is directly contradicted by published caselaw from this state concluding that SORA's requirements do not constitute punishment. See, e.g., *Tucker*, 312 Mich App at 681-683; *Temelkoski*, 307 Mich App at 270-271; *People v Golba*, 273 Mich App 603, 620; 729 NW2d 916 (2007); *Pennington*, 240 Mich App at 197.

## III.  PAROLE REVOCATION

Lastly, in a supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, defendant argues that his parole revocation premised on the same SORA violations should also be reversed in the event the above criminal convictions are vacated.  Because defendant is not entitled to appellate relief with respect to his SORA violation convictions, we need not address this conditional issue.  Moreover, even if we found merit in defendant's other claims of error, we could not grant the requested relief because this appeal was taken from the circuit court's judgment of sentence and not the separate determination that defendant violated the terms of his parole.

Affirmed.

/s/ David H. Sawyer
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola