DECISION
This matter is before the Court on the defendant, Jason Williams' (Williams or defendant) motion challenging the constitutionality of the registration provisions of the Rhode Island Sexual Offender Registration and Community Notification Act, (G.L. § 11-37.1 et seq., (the Act). Additionally, the defendant petitions this Court to permit further discovery of all documents relating to his classification by the Sexually Violent Behavior Board of Review (the Board). The defendant also requests that this Court appoint an expert in the field of psychiatry to assist the Court in determining whether the defendant's conduct constituted sexually predatory behavior. The facts insofar as pertinent follow.
 Travel/Facts
On February 6, 1998, Williams pled nolo contendere to one count of first degree sexual assault committed when he was twenty-three (23) years old, upon a sixteen (16) year old girl that allegedly occurred on June 1, 1997. For this conviction, Williams was sentenced to ten (10) years in prison, with twenty (20) months to serve, the balance suspended and probation for an equal period of time. On February 19, 1998, the defendant also pled nolo contendere to one count of third degree sexual assault that allegedly occurred between June 21, 1996, and September 17, 1996. Subsequent to the February 19, 1998 plea, Williams received a sentence to run concurrently with the previous sentence of five (5) years, one to serve, the balance suspended with probation.
Pursuant to the requirements of the Rhode Island Sexual Offender Registration and Community Notification Act, G.L. § 11-37.1 et seq., the Department of Corrections forwarded Williams' relevant records and information to the Sexually Violent Predator Board of Review. The Board is authorized to find whether or not a person convicted of a sexually violent offense "is possessed of a mental abnormality that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes him a menace to the health and safety of other persons." G.L. § 11-37.1-6 (C).[1]
On January 21, 1999 the Board concluded that Williams "does appear to possess a personality disorder that would make likely his engagement in sexually violent predatory offenses." The Board based this conclusion on evidence of Williams' significant criminal record, history of violence, lack of either sex offender or substance abuse counseling, his minimization of his criminal behavior, and a relationship with the victim [of the first degree sexual assault] for the primary purpose of victimization.[2] On January 22, 1999, the Board forwarded its findings to this Court for its determination as to whether or not Williams is a sexually violent predator. See G.L. §11-37.1-6(B)
After Williams' release from prison on or about February 3, 1999, he registered with the Woonsocket Police pursuant to G.L. §§11-37.1-3, 11-37.1-4, 11-37.1-5, 11-37.1-6. After receiving the Board's report, the State notified Williams on April 8, 1999, that this Court, would determine whether Williams is a sexually violent predator, pursuant to G.L. § 11-37.1-6. On September 10, 1999, the Office of Public Defender asserted that it was no longer mandated to represent the defendant at this Court's Sexually Violent Predator determination because it is a civil proceeding. This Court subsequently appointed new counsel for Williams on September 13, 1999 and said counsel filed the instant motion.
 The 1996 Act and the 1999 Amendments
On July 24, 1996, the Rhode Island General Assembly enacted the "Sexual Offender Registration and Community Notification Act" (the Act). G.L. § 11-37.1 et seq. This statute includes community notification provisions modeled after New Jersey's "Megan's Law."[3] Rhode Island's version of this law consists of two components — offender registration and community notification. G.L. § 11-37.1 et. seq.,; See also In re Matthew A., 743 A.2d 553 (RI. 2000). In June of 1999, the General Assembly amended the "Sexual Offender Registration and Community Notification Act." The amendments relevant to the instant matter include the following provisions:
 (1) A person determined to be a "sexually violent predator" is required to register his address annually with law enforcement, in person, for life, and such person must verify his address with law enforcement on a quarterly basis, also for life; See G.L. §§ 11-37.1-3, 11-37.1-4, 11-37.1-6 (E), and 11-37.1-8 (B).
 (2) Two new categories of sexual offenders, "recidivists" and "aggravated crime offenders" are also required to register their addresses with law enforcement, in person and for life. Such individuals must also verify their addresses with law enforcement on a quarterly basis for life;[4] See G.L. § 11-37.1-4 (C).
 (3) Initial registration for formerly incarcerated individuals is required in person with the local law enforcement agency within twenty four (24) hours of release from confinement; See G.L. § 11-37.1-4 (E)
 (4) An individual required to register as a "sexually violent predator" may no longer petition the Board of Review of Sexually Violent Behavior to review his or her status as a sexually violent predator on an annual basis.[5]
First, the Court must address the contention propounded by Williams that the 1999 Amendments are inapplicable to him based upon the presumption that statutes and their amendments apply prospectively. See Hydro-Manufacture v. Kayser-Roth Corp.,640 A.2d 950, 954-55 (RI. 1994). Williams maintains that the 1999 amendments are immaterial to his circumstances because the criminal conduct and subsequent plea occurred prior to the enactment of the 1999 amendments. The defendant asserts that "[o]nly when "it appears by clear, strong language or by necessary implication that the Legislature intended' a statute to have retroactive application will the courts apply it retrospectively." Id. at 954 (citing VanMarter v.Royal Indemnity Co., 556 A.2d 41, 44 (R.I. 1989)).
Additionally, Williams maintains that the third degree sexual assault offense should not be covered by the 1996 Act (G.L. § 11-37.1et seq.) because the alleged assault occurred between June 21, 1996 and September 17, 1996, and the 1996 Act was enacted approximately one month later, on July 24, 1996. The defendant claims that this new legislation does not apply to conduct committed before the effective date of the amendments. He further claims that the Board erroneously considered his third degree sexual assault when finding him to be a sexually violent predator. In light of this alleged error, Williams requests that this Court remand the matter to the Board for reconsideration of their findings.
In order to resolve this inquiry of statutory applicability, the Court must first determine and effectuate the Legislature's intent when enacting the 1999 amendments. See D'Ambra v. North ProvidenceSchool Committee, 601 A.2d 1370, 1374 (R.I. 1992). To reach a resolution, the Court shall examine the "language, nature, and object of the statute." Id. at 1374 (quoting Lake v. State, 507 A.2d 1349, 1351 (R.I. 1986)). Although the defendant asserts that a statute is presumed to operate prospectively, the Rhode Island Supreme Court has previously. established that "a prospective-only approach to the operation of a judicial decision is the exception rather than the rule." Landmark Medical Center v. Gauthier, 635 A.2d 1145, 1154 (R.I. 1994) (quoting State v. Porter, 437 A.2d 1368, 1371 (R.I. 1981).
The 1999 amendments expand the duration requirements of registration for the life of the offender and establish more rigorous registration obligations for an increased class of offenders. Clearly, the Legislature's intent in enacting stricter provisions is to maintain accurate and updated records of persons who pose a potential threat to the safety and health of other persons due to convictions for sexually predatory conduct, sexually aggravated offenses, and a likelihood of committing additional offenses because of demonstrated recidivism. See G.L. §§ 11-37.1-3, 11-37.1-4,11-37.1-6, and 11-37.1-8. Thus in carrying out this intention, it is unlikely that the Legislature would intentionally exclude [from the more rigorous 1999 amendments] sexual offenders convicted after the 1996 Act but prior to the 1999 amendments. A statutory application of this sort defeats legislative intent, requiring the Court to look beyond mere semantics to give effect to the purposes of the act. SeeSorenson v. Colibri Corp., 650 A.2d 125, (R.I. 1994). When a Legislature acts within the scope of its powers, amendments to existing statutes should be given full force and effect by the courts." Craig v. Pare, 497 A.2d 316, 319 (R.I. 1985).
Further, the 1996 Act provides that such new law "shall take effect upon passage and shall apply to those person who are convicted of an offense requiring registration . . . which [offense] was committed after the effective date of this act [July 24, 1996]." P.L. 1996 ch. 104, § 4. The 1999 amendments did not alter the effective date of the 1996 Act, and did not replace the 1996 date with a new date for a future offense to fall under the 1999 amendments. The presumption is that a general revision of a statute does not change the existing law, unless an intention to make such change clearly appears. Viola v. Cahir, 40 A.2d 733, 70 R.I. 394, (R.I. 1944). Here, the Legislature clearly intended to change certain portions of the Act while leaving other portions intact and controlling as law. Thus the 1999 Amendments are applicable to Williams' convictions and his request for a remand to the Board for reconsideration of their finding as to his third degree sexual assault is denied.
 The Ex Post Facto Contention
The defendant alternatively argues that if this Court determines that the 1999 amendments do in fact apply to both of Williams's convictions, such an application would violate the ex post facto clauses of the United States Constitution and also the Rhode Island Constitution. (U.S.C.A. Const. Art. 1, sec. 10; R.I. State Const. Art. 1, sec. 12). "Violation of the ex post facto clause occurs only when there is retrospective application of law that disadvantages an offender by altering the definition of criminal conduct or increasing the punishment for the crime." U.S.C.A. Const. Art. 1, § 10, cl. 1; Const. Art. 1, § 12. [2] [3] [4].
The United States Supreme Court has stated that the hallmark of an ex post facto law is the imposition of punishment for previously committed acts. DeVeau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109, 1120 (1960). The Court determined that the relevant question to determine the validity of an alleged ex post facto law is whether the legislative intent is to punish the individual for past conduct or whether the negative consequences are mere incidents to the aim of the legislation. Id.; (see also Collinsv. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990);State v. Figueroa, 639 A.2d 495, 499 (R.I. 1994); ("It is black letter law that the ex post facto clause in both our state and federal constitutions only prohibit retroactive penal legislation.")).
Williams asserts that there are "significant negative concomitants of being forced to register as a sex offender," including criminal penalties for failing to comply with the registration requirements of this statute. The Rhode Island Supreme Court has determined that only legislation that affects remedial issues may be given retroactive effect. See Lawrence v.Anheuser-Busch, Inc., 523 A.2d 864, 869 (R.I. 1987). Williams further contends that the elimination of the offender's right to a review of the registration requirement evidences a compelling element of the alleged punitive nature of the law because registration is premised solely upon an individual's past criminal record.
In discerning whether the Act triggers ex post facto violations, this Court shall contemplate the holdings of other jurisdictions in this respect. Although federal courts are split as to whether the application of sexual offender registration and community notification statutes constitute retroactive penal legislation or merely negative ramifications of necessary statutory requirements, the majority of courts have determined that "the remedial goal of protecting the public outweighs any punitive effect of registration, including any infringement on the rights of the offender." State v.Bollig, 232 Wis.2d 561, 605 N.W.2d 199 (2000). Additionally, although Williams maintains that his inability to challenge his registration obligation constitutes punishment, " other jurisdictions have determined that such circumstances do not violate ex post facto provisions. See Roe v. Farwell, 999 F. Supp. 174 (D. Mass. 1998); seealso People v. Pennington, 240 Mich. App. 188, 196, 610 N.W.2d 608
(neither notification or registration inflicts suffering, disability, or restraint on the registered sex offenders.); People v.Castellanos, 21 Cal.4th 785, 795, 982 P.2d 211, 215 (1999) ("[v]irtually every court recently considering sex offender registration laws has held that these requirements are regulatory rather than punitive").
Additionally, the Michigan Appellate Court recently equated the registration and notification requirements of its sexual offender registration statute to the registration and notification obligations mandated in its quarantine legislation. The Court determined in pertinent part:
 "The registration and notification requirements can be more closely analogized to quarantine notices when public health is endangered by individuals with infectious diseases. . . [w]henever notification is directed to a risk posed by individuals in the community, those individuals can expect to experience some embarrassment and isolation. Nonetheless, it is generally recognized that the State is well within its rights to issue such warnings and the negative effects are not regarded as punishment." People v. Pennington, 240 Mich. App. 188, 194, 610 N.W.2d 608, (2000) (citing Lanni v. Engler, 994 F. Supp. 849 (E.D. Mich. 1998).
In light of the findings of these other Courts, this Court determines that the sexual offender registration and notification statute does not trigger ex post facto violations merely because of the negative ramifications and consequences of registration. Any punitive effects that may be created as a result of registration is outweighed by the legislative objective of protecting the health and safety of the public.
 Due Process
Both the United States Constitution and the Rhode Island State Constitution provide that no person shall be deprived of life, liberty, or property without due process of law. (U.S.C.A. Const. Amend. 14, sec. 1; R.I. State Const. Art. 1, sec. 10). The United States Supreme Court has established a balancing test of three factors to determine procedures constitutionally required in these circumstances, which include: (1) the nature of the private interest; (2) the risk or erroneous deprivation of that interest and the probable value of additional safeguards; and (3) the government's interest in taking its action including the burden that any additional procedural requirement would entail. Mathew v. Eldridge,424 U.S. 319, 334-5, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
In the instant matter, Williams maintains that the requirement of registration for life, without a review prior to registering or after a period of time following the original conviction, implicates his due process protections. In expounding on this contention, Williams heavily relies on the reasoning recently adopted by the Massachusetts Supreme Judicial Court in its determination that an individual has a protected liberty and privacy interest protected by procedural due process in the following: (1) "the requirement that he register with local police; (2) "the disclosure of accumulated personal information on request; (3) "the possible harm to his earning capacity; (4) "the harm to his reputation; and (5) "the statutory branding of him as public danger, a sex offender." Doe v. Attorney General,686 N.E.2d 1007, 1013 (Mass. 1997). Additionally, Williams claims that the registration requirements further burden other interests, including the right to travel and interests in employment.
The Massachusetts Supreme Judicial Court has determined that registration requirements impinge upon liberty interests and trigger the procedural safeguards afforded by the Fourteenth Amendment. Id.
The Court weighs in favor of a preregistration hearing requirement because it deems the private interest at stake to be substantial. Doev. Attorney General, 430 Mass. 155, 158, 715 N.E.2d 37 (1999). The Massachusetts sex offender act provides the offender with an individualized evidentiary hearing on the issue of dangerousness prior to registration to determine whether such offenders pose a current threat to children or other vulnerable people. Doe, SexOffender Registry Bd. No. 972 v. Sex Offender Registry Bd.,428 Mass. 90, 91, 697 N.E.2d 512 (1998). Only those individuals determined to pose a present threat to children or other vulnerable people because of a likelihood that he or she will reoffend were required to register with the Commonwealth. Id. Additionally, the Massachusetts sex offender act permits an offender to apply for relief from the obligation to register, but the offender may not do so until at least fifteen years following conviction. Doe v. AttorneyGeneral, 686 N.E.2d at 1014. The Court further justifies the need for preregistration hearings by demonstrating that such hearings promote administrative convenience by ensuring that "law enforcement has more accurate data to use in their investigation: those who no longer pose a threat to children or other vulnerable people will be weeded out during preregistration hearings and allow law enforcement to focus on others." Roe v. Reilly, 11 Mass. L. Rep. 148 (Mass. Super. Ct. 1999).
In rebutting Williams' due process arguments, the State distinguishes the rationale adopted by the Massachusetts Supreme Judicial Court by demonstrating that the Massachusetts sexual offender registration and notification act contains a far wider dissemination provision, allowing any person over the age of eighteen to receive registry information about a specific individual, than its Rhode Island counterpart, which restricts the release of information to those designated by statute. Rhode Island General Law § 11-37.1-11
provides for the release of information as follows:
 (A) "[N]o information obtained under this chapter shall be released or transferred without the written consent of the person or his or her authorized representative.
 (B) No consent for release or transfer of information obtained under this chapter shall be required in the following instances:
 (1) Such information may be disclosed to law enforcement agencies for law enforcement purposes; and,
 (2) Such information may be disclosed to government agencies conducting confidential background checks; and,
 (3) The designated law enforcement agency and any local law enforcement agency authorized by the state agency may release relevant information that is necessary to protect individuals concerning a specific person required to register under this chapter, except that the identity of a victim of an offense that requires registration under this section shall not be released; and,
 (4) Such information may be released or disseminated in accordance with the provisions of § 11-37.1-12."
In referring to other jurisdictions for their findings on due process violations arising from sexual offender registration and notification statutes, a number of Courts have concluded that such requirements do not impermissibly invade an offender's privacy rights, nor do they violate an offender's substantive or procedural due process rights. Cutshall v. Sundquits, 193 F.3d 466 (6th Cir. 1999) (since the sexual offender registration does not implicate a constitutionally protected liberty or property interest in employment, and does not violate any right to privacy under federal or state constitutions, due process clause is not even implicated);Kellar v. Fayetteville Police Dept., 339 Ark. 274, 281, 5 S.W.3d 402, 406 (Ark., Dec. 02, 1999) ("[a]t the outset of this discussion, we note that the vast majority of federal and state courts confronted with the issue of the validity of sex-offender registration statutes have found the laws Constitutional"); Artway v. Attorney General,81 F.3d 1235 (3d Cir. 1996) (registration requirements do not violate ex post facto, double jeopardy, bill of attainder, equal protection, or due process clauses). This Court determines that because of the strict dissemination safeguards enacted in G.L. § 11-37.1-11, registration of one's address merely provide law enforcement with a more convenient means to access information otherwise available to them through more tedious research. See People v. Pennington,240 Mich. App. 188, 196, 610 N.W.2d 608 (2000). The State is well within its right to require registration in light of the potential harm threatened by a lack of registration. The negative effects of such registration should not be interpreted as punishment but rather as a collateral consequence of the conviction. State v. Bollig,232 Wis.2d 561, 605 N.W.2d 199 (2000).
Further, the 1999 amendments provide the individual with notice and an opportunity to be heard, prior to a determination that the individual shall be classified as a "sexually violent predator." See
G.L. § 11-37.1-6 (B). The individual has an opportunity to bring any "other materials" to the Court's attention after receipt of the report compiled by the Board.
 Request for Additional Discovery and Expert Testimony
Williams asserts that there is a compelling need for further discovery into rates of recidivism and a need for clarifications regarding what type of mental abnormality or personality disorders make a person likely to engage in "predatory sexually violent offenses." At this time, the Court is satisfied that both the Board and the State have proffered any available material that would assist the defendant in the subject litigation. Because of the unprecedented nature of such a constitutional challenge in Rhode Island and the relative novelty of the Act since the 1999 Amendments, information has not yet fully been compiled for experts to make meaningful accounts of the success in executing the goals of the Act.
Williams further requests, since he is indigent, that this Court appoint an expert in the field of psychology or psychiatry for the purpose of examining the defendant and assessing whether or not he suffers from a personality disorder that makes him likely to engage in sexually violent predatory offenses. See G.L. § 11-37.1-2 (H). In this case, the appointment of a mental health professional to address the diagnosis of the defendant as having a personality disorder is critical. The fact that this proceeding is not part of the criminal trial itself does not affect the analysis. First the decision is being made by the sentencing judge, which makes the decision part of the nexus of the criminal case. Second, if one accepts the argument that due process is implicated by the classification of a person as a sexually violent predator, than the ability to contest that classification must include the appointment of necessary experts. For example, when a defendant can demonstrate, even in a civil case, that appointment of counsel is required to avoid a denial of due process, counsel will be appointed. The Court of Appeals for the First Circuit has said:
 "There is no absolute constitutional right to a free lawyer in a civil case. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991). (citing Bemis v. Kelly, 857 F.2d 14, 15 (1st Cir. 1988); Childs v. Duckworth, 705 F.2d 915, 922 (7th Cir. 1983)). Hence, to succeed on this assignment of error, [plaintiff] must demonstrate that he was indigent and that exceptional circumstances were present such that a denial of counsel was likely to result in fundamental unfairness impinging on his due process rights." Id.
(citing Childs 705 F.2d at 922). If the appointment of counsel is required, than the appointment of an expert to make the appointment of counsel meaningful may also be required." Id.
Accordingly, after reviewing the entire record, this Court finds that due process rights of the defendant are not prejudiced by the registration requirements promulgated in the Rhode Island Sexual Offender Registration and Community Notification Act, G.L. § 11-37.1et seq. Williams' request for further discovery into rates of recidivism and a need for clarification regarding what type of mental abnormality or personality disorders make a person likely to engage in "predatory sexually violent offenses" is denied. His request for the appointment of an expert in the field of psychology or psychiatry to assist in the determination of whether his conduct constitutes sexually predatory behavior is granted. Counsel may petition this Court for the appointment of same after submitting his/her qualifications to the Court with notice to the Attorney General and with a request for approval of funds, which are reasonably necessary to assist the petitioner.
Counsel shall prepare an appropriate judgment for entry.
[1] The term "mental abnormality" is defined by G.L. § 11-37.1-2
(H) as follows:
 "[M]ental abnormality shall mean a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons."
[2] Pursuant to G.L. § 11-37.1-2 (i), the term "predator" is defined as follows:
 "[A] person whose act(s) is (are) or was (were) directed at a stranger, or at a person with whom a relationship has been established or promoted for the primary purpose of victimization."
[3] "States across the country began enacting sexual offender legislation following the abduction, rape, and murder of seven-year old Megan Kanka, which occurred in New Jersey in 1994. Unknown to the community, "[t]he man who later confessed to Megan's murder lived across the street from the Kankas and . . . had twice before been convicted of sex offenses involving young girls." In re Matthew A.,743 A.2d 553, 554 (R.I. 2000).
[4] Although a "recidivist" is not specifically defined in the Act, section (C) of G.L. § 11-37.1-4, categorizes a "recidivist" as "any person required to register under [the requirement of this Act] and who has one or more prior convictions for any offense described in G.L. § 11-37.1-2." An "aggravated offense" includes "offenses involving sexual penetration of victims of any age through the use of force or the threat of use of force or offenses involving sexual penetration of victims who are fourteen (14) years of age or under." G.L. § 11-37.1-2 (J).
[5] The repealed portion of the 1996 Act provided in pertinent part:
 "[S]hould the person be determined by the court to be a sexually violent predator, the board shall meet upon request in writing of the person to determine whether or not the person continues to be possessed of a mental abnormality that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. In no case shall the board meet to make such determination more frequently than on an annual basis, subsequent to the initial determination." G.L. § 11-37.1-6 (E) (3)