*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

## STATE OF MICHIGAN

## COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAMON SHAWN WATTS,

        Defendant-Appellant.

UNPUBLISHED
March 9, 2023

No. 358616
Wayne Circuit Court
LC No. 18-006552-01-FC

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of felony murder, MCL 750.316(1)(b), three counts of armed robbery, MCL 750.529(1)(a), four counts of possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b(1), and assault with intent to commit murder, MCL 750.83. Defendant was sentenced to life without parole for felony murder, 25 to 50 years' imprisonment on each armed robbery conviction, 2 years on each felony-firearm conviction, and 25 to 50 years for assault with intent to commit murder. On appeal, defendant argues that he was deprived a fair trial because (1) the trial court committed various evidentiary and instructional errors, and (2) the prosecution improperly commented on his silence during cross-examination. We affirm.

## I. BACKGROUND

This case arises from a robbery at The Water Station, a health food store in Detroit, on November 14, 2017. Siblings Darius Lewis (Darius) and Devin Lewis (Devin), along with fellow former-employee Travon Peppers, were working at the store on that date. As the Lewis brothers and Peppers were closing the store around 7:00 p.m., two African-American men entered wearing all black; the taller of these two men was carrying a handgun and wearing a black ski mask. The taller individual pointed his gun at the three employees and told them to get on their knees and hand over any cash on site. Darius opened the register and the robbers took the entire cash drawer. The robbers then led the employees outside to a lot behind the store and made them empty their pockets and remove their belts. The shorter man began rummaging through one of the employee's

-1-

cars while the taller man held the employees at gunpoint. At this point, a struggle ensued between the three employees and the taller man. The taller man started firing his weapon, and Devin was hit by gunfire. Devin ultimately died from a gunshot to the head.

Police performed DNA testing on two ski masks left at the scene, one of which resulted in a preliminary database match to defendant. Defendant was subsequently detained and interrogated by police. During this interrogation, defendant, after being properly Mirandized,[1] denied ever having been to The Water Station or knowing anyone involved in the case. Police eventually presented defendant with a search warrant for his DNA, at which point he requested an attorney, and police stopped their questioning. Police executed the search warrant and secured a DNA sample from defendant, which matched DNA profiles both from one of the recovered ski masks and from Devin's (the deceased) nail clippings taken at the scene.

Defendant's jury trial took place over five days in October 2020. As relevant here, the trial court, before the prosecution's final witness testified, asked about an alibi notice in the file and whether defense counsel had made arrangements to have the alibi witnesses immediately available in the event he may be calling those witnesses; defense counsel acknowledged the alibi notice and stated that he believed he could contact them and have them accessible within a few minutes. Following the close of the prosecution's case in chief and the trial court's denial of defendant's motion for a directed verdict, however, defense counsel stated that he would not call any alibi witnesses. At this time, the prosecution noted two separate alibi notices filed by defendant during the case, one recently filed by defendant's trial counsel in September 2020, and one filed in November 2018 by defendant's prior counsel; the prosecution stated an intention to cross-examine defendant on these documents.[2]

Defendant then testified on his own behalf and denied having any involvement in the robbery or shooting at issue, stating that he was not in the area on the date in question. Regarding his DNA found on the ski mask and on Devin's fingernail clippings, defendant explained that he and Devin had engaged in a sexual relationship and were intimate together on the day before the robbery. According to defendant, the ski mask was on Devin's car dashboard during this sexual encounter, and defendant used it to wipe away sweat from his body. On cross-examination, defendant stated that, during the robbery and shooting, he was with various "lady friends," including Kapri Bigham and Sincere Bigham, at a different location. These were the alibi witnesses indicated in defendant's September 2020 alibi notice. The prosecution then asked about defendant's conflicting claim from the November 2018 alibi notice indicating he was actually with a different person, Toriyon Belton, at the relevant time. Defendant confirmed he was with the two

---

[1] See *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] When cross-examining defendant on the separate alibi notices and conflicting statements therein, the prosecution requested that the trial court take judicial notice of these documents and admit them as exhibits in the record. Defense counsel acknowledged that a defendant may be impeached by their contradictory statements in a case, but he otherwise objected to admission of the alibi notices because "[c]ourt pleadings are not evidence." The court admitted the documents over defendant's objection as Exhibits 173 and 174.

Bigham women and not with Belton, whom he admitted was a friend, and he accused his prior counsel of filing the earlier alibi notice without his knowledge.

Next, the prosecution asked about defendant's contradictory statements during the police interrogation that he did not know Belton or Devin. Though he now acknowledged knowing both these individuals, defendant refuted the prosecution's characterization that he lied to police during the interrogation. Later during cross-examination, the following exchange occurred between the prosecution and defendant:

> *Q.* [Y]ou've had the benefit of sitting through this whole trial and watch[ing] everyone testify, right?
>
> *A.* I saw it.
>
> *Q.* All right. So you saw, um, your interrogation, right?
>
> *A.* Yes, ma'am.
>
> *Q.* And you'd agree with me you didn't have much to say, did you?
>
> *A.* No.

Defense counsel objected to this questioning as an improper commentary on defendant's silence, but he was overruled by the trial court.

Defendant was ultimately convicted and sentenced as indicated earlier in this opinion. This appeal followed.

## II. DEFENDANT'S SILENCE

Defendant argues that he is entitled to a new trial because the trial court improperly allowed the prosecution to question him on his silence during the police interrogation in violation of his Fifth Amendment rights as indicated in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). We disagree.

The right against compelled self-incrimination is guaranteed by both the United States and Michigan Constitutions. U.S. Const., Am. V; Const. 1963, art. 1, § 17. "Non-volunteered statements made during custodial interrogations are admissible only if a defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." *People v White*, 294 Mich App 622, 627; 823 NW2d 118 (2011). "Where the record indicates that a defendant's silence is attributable to an invocation of his Fifth Amendment privilege or a reliance on *Miranda* warnings, use of his silence is error." *People v McReavy*, 436 Mich 197, 201; 462 NW2d 1 (1990). We review constitutional issues, such as those concerning Fifth Amendment rights, de novo. *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000).

In *McReavy*, the Court concluded that evidence of the defendant's nonresponsive conduct—i.e., his silence—during a police interrogation was admissible at trial because the defendant waived his Fifth Amendment rights by answering some, but not all, of the police's

questions. *Id*. at 210-217. The Court stated, "This is a case of a defendant who did not respond to some questions while responding to others during the period of time in which the trial court found that the state had carried the heavy burden of proving that defendant had waived his rights." *Id*. at 212. It elaborated:

> If the defendant had refused to say anything after being given his *Miranda* warnings, testimony about that refusal would have been improper. The relevant inquiry is first whether the defendant has remained silent. If so, there is an irrebuttable presumption of irrelevancy, and such silence may not be used substantively or for impeachment purposes since there is no way to know after the fact whether it was due to the exercise of constitutional rights or to guilty knowledge. Where the defendant has not maintained silence, but has chosen to speak, the [United States Supreme] Court has refused to endorse a formalistic view of silence.
>
> \* \* \*
>
> We have found no authority for the proposition that a defendant's nonverbal conduct during interrogation, after a valid waiver of the right to remain silent, is an exercise of that Fifth Amendment right to remain silent or that the description of partial silence in such a setting is an error of constitutional dimension. We conclude that admission of testimony regarding [the] defendant's conduct during the conversation did not violate the Fifth or Fourteenth Amendment or the Michigan Rules of Evidence. . . . While the Fifth Amendment right to remain silent undoubtedly may be invoked during interrogation, the facts of this case do not support a finding that [the] defendant McReavy invoked that right. [*Id*. at 217-220.]

Here, defendant likewise did not remain silent after having been provided with his rights as articulated in *Miranda*. Only when defendant was presented with the search warrant for a DNA sample did he request an attorney, at which point police promptly stopped their questioning. Otherwise, defendant willingly answered various questions during the interrogation. Under these circumstances, as in *McReavy*, "[t]he record supports . . . that the defendant did not invoke his Fifth Amendment privilege until [after] the interrogation in issue. Not until then could the defendant again reasonably believe that the state was assuring him his conduct during the course of making a statement would not be used against him." *Id*. at 212. With no constitutional barrier to admission of defendant's partial silence during the interrogation, we conclude that the trial court did not abuse its discretion by allowing this minimal questioning by the prosecutor.

III. ALIBI

Defendant next argues that the trial court committed various evidentiary errors related to the two alibi notices and thus denied him a fair trial. Specifically, defendant first argues that the trial court erred by admitting the alibi notices over his objection and allowing the prosecution to question him concerning the notices.

"The decision whether to admit evidence is within the trial court's discretion, which will be reversed only where there is an abuse of discretion." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). But decisions regarding the admission of evidence frequently involve preliminary questions of law, such as whether a rule of evidence or statute precludes admitting the evidence, and this Court reviews questions of law de novo. *Gursky*, 486 Mich at 606.

While defendant objected to admission of the alibi notices into evidence, he did so on different grounds as asserted on appeal. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) ("To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal."). He also never objected to the related questioning on these notices. Accordingly, defendant failed to preserve his specific alibi-related evidentiary errors asserted on appeal. Unpreserved errors are reviewed for plain error affecting a defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. . . . Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings[] independent of the defendant's innocence. [*Id*. (quotation marks and citations omitted).]

Under MCL 768.20, if a defendant proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant is required to file and serve a notice of alibi on the prosecutor no less than 10 days before the trial. The purpose of such notice is to serve the interests of both parties and the public by facilitating orderly, uninterrupted trials. *People v Merritt*, 396 Mich 67, 85; 238 NW2d 31 (1976) (citation omitted). As a party-opponent admission under MRE 801(d)(2)(A), a "notice of alibi may be used to impeach defendant's credibility at trial when his testimony is inconsistent with the contents of the alibi notice." *People v McCray*, 245 Mich App 631, 636-637; 630 NW2d 633 (2001). In addition, under MRE 613(b), extrinsic evidence of a prior inconsistent statement by a witness is admissible if the witness is afforded an opportunity to explain or deny the same. Thus, an alibi notice may serve as extrinsic evidence of a prior inconsistent statement of a defendant if the defendant testifies at trial in a manner different than that set forth in the alibi notice. However, extrinsic evidence used to impeach witness credibility under MRE 613(b) may not be introduced as evidence for the improper purpose of proving the truth of the matter asserted, *People v Stanaway*, 446 Mich 643, 692-693; 521 NW2d

557 (1994), nor may it be substantively admitted as an exhibit at trial. *People v Alexander*, 112 Mich App 74, 77; 314 NW2d 801 (1981).[3]

Two alibi notices were filed in this matter. The first alibi notice was filed on November 5, 2018 and stated that on the night of the incident, defendant was with Belton. However, a video of defendant's police interrogation wherein defendant denied knowing Belton was played for the jury. In addition, defendant testified at trial that he was with the Bigham sisters and not Belton. As such, the first alibi notice was both a prior inconsistent statement of defendant's under MRE 613(b) and a party-opponent admission under MRE 801(d)(2)(A) and could be used to impeach his credibility.

The second alibi notice was filed on September 25, 2020 and stated that on the night of the incident, defendant was with the Bingham sisters. Because the alibi notices differed, the second alibi notice is also a prior inconsistent statement, not made under oath, and, as such, may be used to impeach defendant's testimony under MRE 613(b). While the notices were not admissible as substantive evidence, and should not have been admitted as exhibits, the error in admitting the exhibits was harmless because the jury properly learned of the alibi notices, the prosecutor did not discuss or question defendant's failure to call the alibi witnesses, and the evidence concerning defendant's guilt was overwhelming.[4] Given the contradictions in the alibi notices and defendant's trial testimony, the trial court did not commit plain error affecting defendant's substantial rights by allowing the admission of and questioning regarding the two alibi notices.

Defendant next contends that the alibi notices had been withdrawn and, therefore, that it was improper for them to be admitted as impeachment evidence. According to defendant, the improper admission of and questioning on these alibi notices denied him a fair trial because it constituted an impermissible shifting of the burden of proof, suggesting to the jury that it was defendant's burden to produce alibi witnesses in order to prove his innocence and allowing the jury to presume his guilt from a failure to do so. Defendant further claims this evidence was inadmissible for impeachment purposes because his trial testimony was consistent with the most recent notice of alibi filed by his trial counsel.

Defendant's trial counsel, when objecting to admission of the alibi notices, stated that "impeaching someone with the information on a document that is filed with the court is allowable . . . ." He later elaborated:

> I'm not arguing or disagreeing with [the] Court in the fact that a person can be impeached by what they told the court . . . . That's clear that if a person files an

---

[3] Published opinions of this Court issued prior to November 1, 1990, are not binding, but may be considered for their persuasive value. MCR 7.215(J)(1).

[4] See MCL 769.26 ("No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.").

alibi notice they can be impeached with it. My objection is the actual physical filing document being admitted into evidence. That's my argument. . . . [R]eading the information is putting everyone on notice of what is going on but actually admitting the information into evidence would be erroneous.

Defendant's evidentiary challenge regarding the alibi notices and related questioning, to the extent of whether he could be impeached with this evidence, was thus arguably waived and need not be addressed by this Court. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (a party's express approval of the trial court's action constitutes waiver and extinguishes any error). For purposes of thoroughness, we nevertheless will address defendant's argument on this issue.

"As a general rule, where a defendant effectively withdraws his notice of alibi by failing to present any evidence on the defense [at trial], it is improper for the prosecution or the trial judge to comment on the defendant's original intention to present an alibi." *People v Holland*, 179 Mich App 184, 190; 445 NW2d 206 (1989). "Such comment is tantamount to shifting the burden of proof by allowing the jury to make adverse inferences from defendant's or the alibi witness's failure to testify." *Id*. However, this Court has held that, even if a defendant withdraws a notice of alibi, such is still admissible to impeach a defendant's credibility as a party-opponent admission under MRE 801(d)(2)(C) "when [the defendant's] testimony is inconsistent with the contents of the alibi notice." *McCray*, 245 Mich App at 634-637.

First, we disagree with defendant that he withdrew the alibi notices. We do acknowledge the unique circumstances here with the first and most-contradictory alibi notice having been filed by defendant's initial counsel who withdrew before trial. But the record nevertheless lacks any indication that defendant or his trial counsel ever acted or even expressed an intention to rescind the earlier filing despite the ample time available to do so. Notably, at a July 14, 2020 pretrial hearing, when defendant's trial counsel first indicated his intention to present alibi witnesses, the prosecution explicitly suggested

that defense counsel go and look at prior filings of the multiple other defense attorneys that the defendant has had because I believe there's been an alibi notice previously filed by one of the counsels where they indicated that the defendant was at a different location with a different person, so defense counsel probably wants to pull the prior alibi notice that was filed.

The record does not show any such action taken by defendant or his counsel, either before or at trial.

Second, while defendant's trial counsel did ultimately forgo presenting any alibi witnesses at trial, defendant nevertheless testified on his own behalf that he was elsewhere during the robbery and shooting. Though not explicitly mentioning on direct examination those individuals from the filed alibi notices, this was still an alibi defense such as to allow for the prosecution's cross-examination on the issue. See *People v Von Everett*, 156 Mich App 615, 624-625; 402 NW2d 773 (1986) (stating that the defendant "testified to an alibi" by saying that he was out of state during the armed robbery at issue). Therefore, the admission of and questioning regarding the alibi notices did not shift the burden of proof such to warrant defendant's requested relief.

Next, even if one or both notices were withdrawn, there existed (as previously discussed) sufficient contradictions for the notices and related questioning to be admissible as party-opponent admissions for impeachment purposes under *McCray*. And, the jury here was sufficiently informed of the circumstances of the initial filing, with defendant explicitly testifying that his prior attorney filed it without his knowledge. See *Von Everett*, 165 Mich App at 624-625 (concluding that a contradictory alibi notice was admissible for impeachment as an opposing-party admission despite the defendant's testimony that the notice was filed without his knowledge).

## IV. JURY INSTRUCTIONS

Defendant argues that, even if notices of alibi were properly admitted for impeachment purposes, the trial court nevertheless erred because its jury instructions improperly permitted jurors to consider the alibi notices as substantive evidence of guilt. According to defendant, the trial court's failure to explicitly instruct the jury that the alibi notices could only be used for impeachment purposes "essentially instructed the jury that it could utilize all the exhibits (including the notices of alibi) as substantive evidence when deciding the case . . . ." While acknowledging that he never requested any limiting instruction in this matter, defendant argues that the error was so prejudicial to have affected the trial outcome and thus justify relief.

"Where no request has been made for a limiting instruction on the use of prior inconsistent statements, the general rule is that relief will not be given when there is no demonstration or likelihood of prejudice and where neither the court nor the prosecutor suggested to the jury that prior inconsistent statements could be used as substantive evidence." *People v Hodges*, 179 Mich App 629, 632; 446 NW2d 325 (1989). Moreover, to preserve an instructional issue for appeal, a party must object to the instruction before the jury deliberates. MCR 2.512(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). An explicit and repeated approval of an instruction constitutes waiver, *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011), and a defendant who waives an instructional issue cannot obtain appellate review. *People v Hall (On Remand)*, 256 Mich App 674, 679; 671 NW2d 545 (2003).

Here, the trial court went over each proposed instruction with no relevant objections by defendant. And the court then explicitly asked the parties whether it "miss[ed] any instructions that you believe should be included . . . that were not provided?" Defense counsel answered, "No." Defendant's alleged instructional error was thus potentially waived by his trial counsel's repeated approval of the jury instructions and need not be addressed by this Court. Defendant also failed to present this instructional challenge in his statement of questions presented on appeal. See *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009) ("[T]his issue was not properly presented for appeal because it was not raised in the statement of questions presented in [the] defendant's appellate brief."). We will nevertheless briefly address this unpreserved issue.

Issues of law arising from jury instructions are reviewed de novo on appeal, but a trial court's determination whether an instruction was applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. *Kowalski*, 489 Mich at 501. The reviewing court must balance the general tenor of the instructions in their entirety against the potentially misleading effect of a single isolated sentence. *People v Waclawski*, 286 Mich App 634, 675; 780 NW2d 321 (2009). Even if somewhat imperfect, instructions do not

create error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights. *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012); *People v Clark*, 274 Mich App 248, 255-256; 732 NW2d 605 (2007).

We conclude that defendant is not entitled to relief on this issue because he was not prejudiced by the challenged jury instructions. Specifically, defendant never requested a limiting instruction regarding the alibi notices, and neither the trial court nor the prosecution suggested to the jury that the alibi notices could be used as substantive evidence. See *Hodges*, 179 Mich App at 632. The prosecution did, at one point, note for the court that the alibi notices could also be admitted for substantive purposes, but this point was never contested by defendant nor decided by the trial court, and this comment was made outside the jury's presence. Otherwise, the prosecution consistently maintained that its admission of and questioning regarding the alibi notices were to impeach defendant's inconsistent statements and credibility.

The prosecution noted in its closing rebuttal that the alibi notices were admitted as exhibits, while it otherwise made clear to the jury that this evidence was being presented to challenge defendant's credibility:

> [Defendant] filed two different alibi notices. The first [alibi notice] says, oh, that day, I remember that day on November 14th, I was with Toriyon Belton, you know, the girl I don't know, I was with her. Then [defendant] says, wait, scratch that. I wasn't with Toriyon Belton. I'm going to file a new notice. This time with [the Bigham sisters]. . . . [Defendant] changed his story. He said, oh, I was here, no, no, no, I change it, now I'm with this person. And he took the stand and I got to cross him on it . . . .
>
> Now you also have all of the other inconsistencies you heard . . . .

And the trial court merely instructed the jury, correctly, that it could only consider properly admitted evidence:

> Now when you discuss the case and decide on your verdict, you may only consider the evidence that has been properly admitted in the case. Therefore, it is important for you to understand what is evidence and what is not evidence.
>
> Evidence includes only the sworn testimony of the witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.
>
> * * *
>
> Facts can be proven by direct evidence from a witness or an exhibit.

The court did tell the jury that it "may accept [the alibi notices] as true but . . . [is] not required to do so"; however, this isolated statement did not affect the general tenor and fairness of the instructions as a whole such to create an error requiring reversal here, particularly under the more

demanding standard when no objection was made or limiting instruction requested.

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto