*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID JOHN KICZENSKI,

        Defendant-Appellant.

FOR PUBLICATION
October 28, 2024
1:53 PM

No. 364957
Bay Circuit Court
LC No. 80-001325-FC

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

MURRAY, J.

In 1980, Defendant and four other men participated in the gang rape of the victim. Specifically, and at his suggestion, defendant and one other man raped the victim while she was being held down by the other three men. Following a trial before a jury of his peers, defendant was convicted of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(d)(*ii*). Because he was a repeat felon, defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of 35 to 100 years' imprisonment for each offense. He also became subject to the requirements of the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.*, which first took effect in 1995, while he was incarcerated. Defendant now argues that application of the 2021 SORA amendments constitutes retroactive punishment in violation of the Ex Post Facto Clauses of the federal constitution, US Const, art I, § 10, and the state constitution, Const 1963, art 1, § 10. We hold that the 2021 SORA amendments do not constitute punishment as to sex offenders under these constitutional provisions, and therefore we affirm the trial court order denying defendant's successive motion for relief from judgment.

## I. BACKGROUND

The facts underlying defendant's convictions are described in the opinion resolving his unsuccessful appeal in *People v Kiczenski*, 118 Mich App 341, 344; 324 NW2d 614 (1982):

> [O]n the evening of September 5, 1980, the complainant, while walking home from a party, accepted a ride from the five occupants of a yellow van. Subsequently, all five occupants, one of whom is this defendant, were charged with sexual offenses.

Shortly thereafter, when the van stopped, complainant decided to leave the van. According to one of the five occupants who became a witness for the prosecution, defendant then stated to the group, "let's go get her and bring her back", whereupon complainant was returned forcibly to the area of the vehicle. There was testimony that in consecutive incidents, two of the men, one of whom was defendant, engaged in sexual intercourse with complainant while the other men held and restrained her on the ground.

Sometime after he was released from prison, defendant filed a motion arguing that application of the 2011 SORA registration requirements to him was an ex post facto punishment, citing *People v Betts*, 507 Mich 527, 562; 968 NW2d 497 (2021), as a retroactive change in the law. In its response, the prosecutor acknowledged that defendant could no longer be required to register under the 2011 SORA, but argued that the 2021 SORA had cured the unconstitutional elements as applied to defendant.

The trial court denied defendant's motion, opining that (1) it was "debatable" whether *Betts* was a retroactive change in law, (2) defendant could "no longer be compelled to register under the" 2011 SORA, and (3) defendant was "required to register" under the 2021 SORA. And, because "[t]o date, no court has found the new statute to be unconstitutional or violative of the Ex Post Facto Clauses found in the Michigan and United States Constitutions," the court had "no basis to do so either." We subsequently granted defendant's delayed application for leave to appeal. *People v Kiczenski*, unpublished order of the Court of Appeals, entered July 31, 2023 (Docket No. 364957).

## II. ANALYSIS

## A. JURISDICTION

At oral argument the prosecution raised whether we have subject-matter jurisdiction over this appeal, arguing that we do not because any SORA requirements placed on defendant were by operation of law, not by a judgment or subsequent order. Because subject-matter jurisdiction can be raised at any time during a proceeding, *Bank v Mich Ed Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016) (quotation marks and citation omitted), we ordered the parties to submit supplemental briefs addressing the issue. We conclude that we have subject-matter jurisdiction over the circuit court's order.

"Subject-matter jurisdiction is a legal term of art that concerns a court's authority to hear and determine a case." *People v Washington*, 508 Mich 107, 121; 972 NW2d 767 (2021). "This authority is not dependent on the particular facts of the case but, instead, is dependent on the character or class of the case pending." *Id*. (quotation marks and citation omitted). The court rules are one source providing this Court with jurisdiction over orders entered by circuit courts. The filing of an appeal of right from a final judgment or order grants us jurisdiction, MCR 7.203(A)(1) and (2), as does granting leave to appeal from a nonfinal order, MCR 7.203(B)(1). Here, we granted defendant leave to appeal the circuit court's order denying defendant's motion for relief

-2-

from judgment. We therefore have jurisdiction over this appeal.[1] As defendant recognizes, although the better question may be whether the trial court lacked jurisdiction to entertain the motion for relief from judgment under these circumstances, the prosecution has not raised that issue for resolution. Interestingly, the fact that a judgment did not contain the challenged restrictions because SORA did not exist when the defendant was sentenced did not raise a jurisdictional concern in *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000), where we addressed an ex post facto argument arising from the denial of defendant's motion for relief from judgment.

In any event, we likewise conclude that subject-matter jurisdiction existed in the circuit court to decide defendant's motion. The circuit court had the power to resolve the motion as it was filed in the case where defendant's felony trial was handled. See *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) ("Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases."); MCR 6.008(B) ("The circuit court has jurisdiction over all felonies from the bindover from the district court unless otherwise provided by law."). The lack of a prior order or judgment embodying the restrictions may impact the underlying ruling, but would not deprive the circuit court of jurisdiction to resolve the motion for relief from judgment.

## B. THE MERITS

### 1. GENERAL STANDARDS OF REVIEW

In addressing this challenge to the constitutional validity of several parts of the SORA, we are ever mindful that "[s]tatutes are presumed to be constitutional and must be so construed unless their unconstitutionality is readily apparent." *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001). Defendant, as the party challenging the statute's constitutionality, "has the burden of proving its invalidity." *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). A facial challenge to a statute asserts that there is no set of circumstances under which the statute is valid. *People v Wilder*, 307 Mich App 546, 556; 861 NW2d 645 (2014). An as-applied challenge to a statute requires a court to analyze whether the statute led to a denial of a specific right in light of the facts developed in the particular case. *Id.* Questions of constitutional law are reviewed de novo. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

### 2. GENERAL EX POST FACTO STANDARDS

The federal constitution prohibits a state from enacting an ex post facto law, see US Const, art I, § 10 ("No State shall . . . pass any . . . ex post facto Law"), and the people of Michigan, adhering as they must to that agreed-upon command, prohibited the Legislature from enacting an ex post facto law. See Const 1963, art 1, § 10 ("No . . . ex post facto law . . . shall be enacted."). The Michigan and federal Ex Post Facto Clauses are interpreted to provide the same protections.

---

[1] The Supreme Court order cited by the prosecution, *People v Spencer*, 493 Mich 939 (2013), does not articulate enough law or factual explanation for it to be precedential. See *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006). Nor does the order cited by defendant, *People v Smith*, 969 NW2d 15 (2022).

See *Betts*, 507 Mich at 542 n 12, citing *In re Certified Question (Fun 'N Sun RV, Inc v Michigan)*, 447 Mich 765, 777 n 13; 527 NW2d 468 (1994) (finding no difference between the protections provided in the Michigan and federal Ex Post Facto Clauses).

"The Ex Post Facto Clauses of the United States and Michigan Constitutions bar the retroactive application of a law if the law: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014). At issue is the third type of ex post facto concern—whether the 2021 SORA amendments increase the punishment for a crime already adjudicated. In determining whether a sanction qualifies as criminal punishment for constitutional purposes, the following seven factors are considered:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . . [*Kennedy v Mendoza-Martinez*, 372 US 144, 168-169; 83 S Ct 554; 9 L Ed 2d 644 (1963) (citations omitted).]

The Michigan Supreme Court has identified "the following five of these seven factors as having particular relevance: (1) whether the statute has historically been regarded as punishment; (2) whether the statute imposes an affirmative disability or restraint; (3) whether the statute promotes the traditional aims of punishment; (4) whether the statute has a rational connection to a nonpunitive purpose; and (5) whether the statute is excessive with respect to its nonpunitive purpose." *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685); slip op at 11. However, these "factors are 'neither exhaustive nor dispositive . . . but useful guideposts.' " *Earl*, 495 Mich at 44, quoting *Mendoza-Martinez*, 372 US at 168-169.

### 3. BRIEF HISTORY OF SORA

Michigan's SORA was passed in 1994, and went into effect on October 1, 1995. 1994 PA 295. "This first version of SORA created a confidential database accessible only to law enforcement; it required persons convicted of certain sex offenses to register and notify law enforcement of address changes." *Betts*, 507 Mich at 533. But several major amendments to the SORA have been passed. The 1997 amendments, 1996 PA 494, made "the registry available for in-person public inspection during business hours." *Id*. at 534. The 1999 amendments, 1999 PA 85, "required computerization of the registry and granted law enforcement the authority to make the computerized database available to the public online." *Id*.[2] The 2002 amendments, 2002 PA

---

[2] In both *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000), and *People v Golba*, 273 Mich App 603, 616; 729 NW2d 916 (2007), this Court held that the SORA requirements (after amendments in 1997 and 1999) were not a punishment as the SORA was

-4-

542, required reporting if a registrant was going to be involved with a college in some capacity, and 2004 PA 238 required "an updated photograph" be added to the online database. *Id*. The 2006 amendments, 2005 PA 121, created "student-safety zones excluding registrants from living, working, or loitering within 1,000 feet of a school." *Id*. at 564. "And in 2006, the Legislature allowed for the registry to send e-mail alerts to any subscribing member of the public when an offender registers within or when a registrant moves into a specified zip code." *Id*. at 534.

The 2011 amendments, 2011 PA 17 and 2011 PA 18, were a particularly major overhaul ("2011 SORA"). "The 2011 amendments completely restructured SORA through the imposition of a tiered classification system, and the duties and requirements of each registrant were based on that registrant's tier classification." *Betts*, 507 Mich at 564. Registrants needed to report in person to law enforcement a certain number of times each year based on tier, even if no changes had occurred. *Id*. at 535. A registrant's tier was described on the online database. *Id*. at 535-536. And the reclassification process "lengthened registration periods, including a lifetime registration requirement for Tier III offenders." *Id*. at 535. The 2011 SORA also amended MCL 28.725(1) and MCL 28.727, "adding events triggering an in-person reporting requirement and decreasing the reporting period to three days." *Betts*, 507 Mich at 564. The previous reporting window had been 10 days. *Id*. at 535. The new triggering events included changes in employment, e-mail and instant message addresses, vehicle, and travel. *Id*. at 534-535.

In *Betts*, the 2011 SORA was successfully challenged on federal ex post facto, due-process, and First Amendment grounds. *Id*. at 567. The Legislature had also passed 2020 PA 295 ("2021 SORA"), which reduced or eliminated certain conditions to address the constitutional issues. *Id*. at 566. The changes in the 2021 SORA included "the removal of the student-safety zones; the removal of the retrospective application of in-person reporting requirements for vehicle information, electronic mail addresses, Internet identifiers, and telephone numbers, MCL 28.725(2)(a); and the removal of registrants' tier-classification information from the public website, MCL 28.728(3)(e)." *Id*.

The current version of SORA requires the following. MCL 28.723(1)(b) requires sex offender registration if an individual was convicted before SORA initially took effect on October 1, 1995, but was still "on probation or parole, committed to jail, [or] committed to the jurisdiction of the department of corrections." MCL 28.722(v)(*iv*) includes "[a] violation of section 520b, 520d, or 520g(1) of the Michigan penal code, 1931 PA 328, MCL 750.520b, 750.520d, and 750.520g," as a tier III SORA offense. MCL 28.724a(2) and (3) requires in-person reporting within three business days when enrolling in or disenrolling from a college. MCL 28.725(1) and (2) requires reporting within three business days when a registrant "changes or vacates his or her residence or domicile," "changes his or her place of employment, or employment is discontinued," "changes his or her name," has "any change in vehicle information, electronic mail addresses, internet identifiers, or telephone numbers registered to or used by the individual," or "intends to

---

"directed at protecting the public and" had "no punitive purpose," *Pennington*, 240 Mich App at 197. Complying with the SORA was therefore not "punishment," and the SORA could not be successfully challenged as an ex post facto punishment. *Id*. at 192-193.

temporarily reside at any place other than his or her residence for more than 7 days." Several of the changes require a defendant to "report in person, or in another manner as prescribed by the department." MCL 28.725(1). In addition, tier III offenders must report four times a year for verification of their residence. MCL 28.725a(3)(c); MCL 28.725a(5). The offender must pay a $50 registration fee every year until a certain threshold is met. MCL 28.725a(6)(b) and (c).

"[A] public internet website" displays an offender's "date of birth," "address," "address of each of the individual's employers," "[t]he license plate number and description of any vehicle owned or operated by the individual," "[a] brief summary of the individual's convictions," and "[a] complete physical description of the individual." MCL 28.728(2)(b) to (h). For a tier III offender to petition for discontinuing registration, he or she must meet the requirements of MCL 28.728c(13), (14), or (15). MCL 28.728c(2) and (3). MCL 28.728c(13) and (15) apply only to offenders who were juveniles when the crime occurred, while MCL 28.728c(14) applies to consensual sex where the victim was at least 13 years of age. There is no doubt that, in accordance with these provisions, defendant must register for life.

## 4. ARE THE SORA REQUIREMENTS PUNISHMENT AFTER THE 2021 AMENDMENTS?

"[T]he Legislature intended the 2021 SORA as a civil regulation." *Lymon*, ___ Mich at ___; slip op at 13. Therefore, the 2021 SORA can only be considered punishment if " 'the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.' " *Id*. at ___; slip op at 10, quoting *Earl*, 495 Mich at 38. Defendant, in seeking to prove that the intended civil regulation is in actuality a criminal punishment, has a difficult path to voyage. For, according to both supreme courts, "the Legislature's manifest intent will be rejected only when 'a party challenging the statute provides *the clearest proof* that the statutory scheme is so punitive either in purpose or effect to negate the State's intention to deem it civil.' " *Betts*, 507 Mich at 543-544, quoting *Kansas v Hendricks*, 521 US 346, 361; 117 S Ct 2072; 138 L Ed 2d 501 (1997).

The *Betts* Court held that the 2011 version of SORA created an ex post facto violation as it pertained to the defendant, who had pleaded guilty to CSC-II, and had been sentenced in 1993. *Betts*, 507 Mich at 536. The Court concluded "that the Legislature likely intended SORA as a civil regulation," but then undertook an analysis of whether this characterization was accurate, or whether the scheme was instead so punitive that it negated this description. *Id*. at 549. The Court ultimately disagreed with the civil regulation label, ruling that "the 2011 SORA's aggregate punitive effects . . . increases registrants' punishment for their committed offenses in violation of federal and state constitutional prohibitions on ex post facto laws." *Id*. at 562. The Court declined to rule on "whether the retroactive application of any post-2011 SORA amendments violates constitutional ex post facto provisions," because neither party had raised that issue. *Id*. at 574 n 30.

In *Lymon*, ___ Mich at ___; slip op at 38, the Supreme Court affirmed this Court's judgment[3] that the 2021 SORA was cruel or unusual punishment for non-sexual offenders. To do so, the Court had to reach the preliminary conclusion that the 2021 SORA was criminal

---

[3] *People v Lymon*, 342 Mich App 46; 993 NW2d 24 (2022), aff'd in part and vacated in part by Lymon, ___ Mich at ___; slip op at 38.

punishment. *Id.* at \_\_\_; slip op at 30. But in determining whether the regulations constituted a punishment, the Supreme Court departed from the analysis employed by this Court by also factoring in the non-sexual nature of the offense. *Id.* at \_\_\_; slip op at 17-30. It concluded only "that the 2021 SORA constitutes punishment as applied to non-sexual offenders," *id.* at \_\_\_; slip op at 30, and left open the question of whether the 2021 SORA amendments were punishment for sexual offenders, *id.* at \_\_\_; slip op at 8 n 6. Continuing, the *Lymon* Court reasoned that whether the 2021 SORA constitutes punishment for sexual offenders would depend on an analysis specific to them, using the factors outlined in *Mendoza-Martinez*, 372 US at 168-169:

> Our opinion does not reach the question whether the 2021 SORA constitutes punishment as to sexual offenders—and, in fact, explicitly vacates the portion of the Court of Appeals opinion that so concluded. To the extent that portions of our *Mendoza-Martinez* analysis might be relevant to a later appeal that considers whether the 2021 SORA constitutes punishment as to sexual offenders, that relevance does not define the outcome of such a future challenge. The *Mendoza-Martinez* analysis is cumulative, and while some of our analysis here will be relevant to other circumstances, some will not. Perhaps the effects of the 2021 SORA as applied to sexual offenders are so punitive as to outweigh the Legislature's civil intent, and perhaps not. The dissent's concerns about the effects of today's holding are premature. [*Lymon*, \_\_\_ Mich at \_\_\_; slip op at 30 n 20.]

Turning back to the case at bar, defendant argues that the 2021 SORA is criminal punishment (and therefore subject to ex post facto consideration), while according to plaintiff, the 2021 SORA is not criminal punishment because the Legislature removed the aspects of the 2011 SORA that had resulted in the *Betts* decision, and because this defendant is a sex offender.[4] We now turn to our independent analysis of the relevant *Mendoza-Martinez* factors, recognizing that portions of the *Lymon* analysis also apply to sexual offenders.

### i. WHETHER THE 2021 SORA REGULATIONS HAVE BEEN HISTORICALLY REGARDED AS A PUNISHMENT

With regard to factor 1, the *Lymon* Court described how "the 2021 SORA continues to resemble the traditional punishments of parole and shaming." *Id.* at \_\_\_; slip op at 14. The comparison to shaming discussed how all registrants have "substantial personal information" made available, and how any registrant moving could trigger notifications to members of the public. *Id.* at \_\_\_; slip op at 16. The Supreme Court's only differentiation based on the offense was its holding that "the label of 'sex offender[]' " was especially shaming for non-sexual offenders. *Id.* at \_\_\_;

---

[4] Plaintiff is correct that *Lymon* addressed a cruel-or-unusual-punishment argument, not an ex post facto one. But in determining whether a statute imposes a criminal punishment, which is all either clause prohibits, the standard is the same. See *Smith v Doe*, 538 US 84, 97; 123 S Ct 1140; 155 L Ed 2d 164 (2003) ("the *Mendoza-Martinez* factors are designed to apply in various constitutional contexts"); *Does 1-7 v Abbott*, 945 F3d 307, 313 n 9 (CA 5, 2019). To that point, the analysis of whether the statute contained a punishment in *Lymon*, \_\_\_ Mich at \_\_\_; slip op at 10-30, exactly matched the factors considered in *Betts*, with both opinions using the *Mendoza-Martinez* factors. *Lymon*, \_\_\_ Mich at \_\_\_; slip op at 11; *Betts*, 507 Mich at 549-562.

slip op at 17. The Supreme Court held that factor 1 weighed in favor of the 2021 SORA being punishment. *Id*. at ___; slip op at 17-18. For sexual offenders, this factor would still appear to weigh in favor of punishment, though somewhat less. After all, the sex offender label would still be, under the *Lymon* rationale, shaming for a sexual offender. However, it would be more accurate. This greater accuracy would have bearing on whether the label is truly "deserved," but not whether it resembles a punishing action.

### ii. WHETHER THE 2021 SORA IMPOSES AN AFFIRMATIVE DISABILITY OR RESTRAINT

According to the *Lymon* Court, despite the 2021 amendments removing and significantly modifying the main restrictive features from the 2011 SORA that the *Betts* Court found most troubling, i.e., the 1,000-foot school boundary (eliminated) and mandatory in-person reporting (modified), see *Betts*, 507 Mich at 550-551, 555-556, the 2021 SORA restrictions still imposed affirmative disabilities or restraints on registrants such that this factor still weighed towards the 2021 SORA being a punishment. See *Lymon*, ___ Mich at ___; slip op at 18-21. In addressing the issue, the Court expressed concern over the "detriment" of registrants having to use first-class mail, instead of appearing in-person, for certain updates. *Id*. at ___; slip op at 19 n 13. In any event, the Court did concede that with the elimination of the 1,000-foot school zone restriction, as well as many of the in-person reporting requirements, this factor was not weighed as strongly towards a punishment conclusion as it was in *Betts*. *Id*. at ___; slip op at 20-21. In light of the *Lymon* Court's reasoning, we feel constrained to reach the same conclusion: factor 2 weighs towards a punishment conclusion, but not as strongly as it did in *Betts*.

### iii. WHETHER THE 2021 SORA PROMOTES THE TRADITIONAL AIMS OF PUNISHMENT

The *Lymon* Court did not alter its analysis on this issue from what was contained in *Betts*, and so we again must conclude, as our Supreme Court has done, that this factor weighs towards a finding that the 2021 SORA constitutes a punishment.

### iv. WHETHER THE 2021 SORA HAS A RATIONAL CONNECTION TO A NONPUNITIVE PURPOSE

*Mendoza-Martinez* factor 4 is considered to be the most important factor in the overall punishment evaluation. See e.g., *Smith v Doe*, 538 US 84, 102; 123 S Ct 1140; 155 L Ed 2d 164 (2003) ("The Act's rational connection to a nonpunitive purpose is a '[m]ost significant' factor in our determination that the statute's effects are not punitive."); *Does 1-7 v Abbott*, 945 F3d 307, 314 (CA 5, 2019) (quoting *Smith* for this factor being "a most significant factor"); *McGuire v Marshall*, 50 F4th 986, 1013 (CA 11, 2022) (referring to the rational connection to a nonpunitive purpose inquiry as "a most—if not *the* most—significant factor"); *Doe v Settle*, 24 F4th 932, 949 (CA 4, 2022) (calling this factor "the most important factor").

With regard to factor 4, the *Lymon* Court described the Legislature's purpose in enacting SORA as preventing future criminal sexual acts and ensuring public safety from particularly dangerous individuals. *Lymon*, ___ Mich at ___; slip op at 22-23. The Court discussed how the inclusion of certain non-sexual offenses did rationally address this purpose, because the offenders

could still pose a serious threat to the public, the included non-sexual crimes often did create a heightened risk of the sexual assault of the victim, and the included crimes could be precursors to later sexual crimes. *Id.* at ___; slip op at 23. The Supreme Court concluded that factor 4 weighed against the 2021 SORA being punishment. *Id.* at ___; slip op at 24.

The analysis of this factor weighs more heavily against the 2021 SORA being punishment for sexual offenders. While still rational, an additional logical step was required in *Lymon* to connect the non-sexual offenders to the prevention of sexual crimes. This additional step is obviously not needed when the initial offense is itself sexual, as it is here. As recognized in *Betts*, 507 Mich at 558: "The 2011 SORA, by identifying potentially recidivist sex offenders and alerting the public, seeks to further the nonpunitive purpose of public safety. Accordingly, given the low bar of rationality, the 2011 SORA is connected to a nonpunitive purpose." The same is true of the 2021 SORA.

In addressing this factor, courts from across the nation have held that the state interest in alerting the public to sex offenders' locations is paramount. As one court recently put it, "[p]ublic safety is a quintessentially legitimate justification, and these [sex offender] registries are no doubt connected to that goal." *Doe*, 24 F4th at 948. Accord *McGuire*, 50 F4th at 1013 (Alabama's residency and employment restrictions "are likewise consistent with the nonpunitive purpose of promoting public safety"); *Millard v Camper*, 971 F3d 1174, 1181 (CA 10, 2020) (Colorado's SORA was deemed not punishment in part because it was "intended to address 'the public's need to adequately protect themselves and their children' from those with prior sexual convictions"); *Doe v Olson*, 696 SW3d 320, 332 (Mo, 2024) (court continued to recognize that the "registration requirements are rationally related to the purpose of public safety and protecting children from sex offenders"); *Rivera v Superintendent*, 40 NY3d 307, 316-317; 221 NE3d 1 (2023) (concluding that the purpose of a condition prohibiting offenders from being near school grounds was nonpunitive because it aims to ensure level III offenders do not have contact with minors); *Kopf v Kelly*, 2024 IL 127464; 240 NE3d 1094, 1129 (2024) ("Sex offender registration is a regulatory scheme designed to foster public safety."); *State v Iowa Dist Ct*, 843 NW2d 76, 81 (Iowa, 2014) ("[T]he purpose of the registry is protection of the health and safety of individuals, and particularly children, from individuals who, by virtue of probation, parole, or other release, have been given access to members of the public."); *Crowley v State*, 188 NE3d 54, 62 (Ind App, 2022) (Indiana registration act "serves a valid regulatory function by providing the public with information related to community safety").[5]

Because the rational connection to the nonpunitive purpose is more apparent than in *Lymon*, factor 4 weighs strongly against the 2021 SORA being considered punishment for sexual offenders.

---

[5] Additionally, it has been noted by one court that since 2005, nearly every court across this vast nation has concluded that a SORA is nonpunitive. See *State v Aschbrenner*, 926 NW2d 240, 248-249 (Iowa, 2019) ("Since we decided *Seering*, every circuit of the United States Court of Appeals has concluded that sex offender registration statutes are nonpunitive. Moreover, many state supreme courts and courts of appeal have reached the same conclusion since 2005."); *Does 1-7*, 945 F3d at 314 ("*Smith* suggests that sex-offender registry statutes are generally not punitive.").

### v. WHETHER THE 2021 SORA REQUIREMENTS ARE EXCESSIVE COMPARED TO THE PURPOSE FOR THEM

" 'The touchpoint for the excessiveness factor is whether the regulatory means chosen are reasonable in light of the nonpunitive objective,' not whether 'the legislature has made the best choice possible to address the problem it seeks to remedy.' " *Crowley*, 188 NE3d at 62, quoting *Hope v Comm'r of Ind Dep't of Correction*, 9 F4th 513, 534 (CA 7, 2021). With regard to this factor, the *Lymon* Court examined whether the 2021 SORA was an excessive means of protecting the public from future sex crimes committed by past *non*-sexual offenders. *Lymon,* ___ Mich at ___; slip op at 24-28. In doing so, the Court acknowledged the "uncertainty of SORA's general efficacy" because of certain research indicating that sex-offender registries do not decrease recidivism, and possibly even increase recidivism because of the "notoriety in the community, unstable housing and employment, and other barriers to reintegration" that they impose. *Id*. at ___; slip op at 25.[6] The Supreme Court also acknowledged "the allegedly measurable decreases in the risk of recidivism as offenders age," *id*. at ___; slip op at 25, but ultimately declined to "endorse either position regarding the efficacy of sex-offender registries or the recidivism rates of registrants," *id*. at ___; slip op at 26 n 18. The Court stated, "Instead, we acknowledge the existence of a robust scientific debate and no universally accepted conclusion on the matters." *Id*.[7]

But the Supreme Court still found the 2021 SORA excessive vis-à-vis non-sexual offenders. *Id*. at ___; slip op at 26. The 2021 SORA had the non-sexual offenders "branded [as] dangerous sex offenders even though their crimes contained no sexual component and even though there has been no determination that they pose such a risk of harm to the community." *Id*. The Court listed the myriad "demanding requirements and consequences" imposed by the 2021 SORA.

---

[6] At least one court has considered the "efficacy" of the statute more of a legislative matter, where that elected body of lawmakers can hold hearings and address whether updates are needed to the legislation. And, more to the current issue, the court found the efficacy argument not enough to disprove the rational connection between the statute and the nonpunitive purpose. See, e.g., *Rivera*, 40 NY3d at 318.

[7] For its part, the *Betts* Court concluded that the statistical research on recidivism at best made the efficacy of the 2011 SORA provisions "unclear." *Betts*, 507 Mich at 561 & n 20. Other courts have recognized a lack of consensus on this issue, with the Pennsylvania Supreme Court concluding, after an evidentiary hearing involving three expert witnesses on sex offender recidivism rates, that all three experts agreed that the recidivism rate for sex offenders *was* higher than the recidivist rates of non-sex offenders. *Commonwealth v Torsilieri*, ___ PA ___; 316 A3d 77, 91, 98-99 (2024). As a result, there was no consensus that the legislative findings supporting the challenged law—that "sex offenders pose a high risk of committing additional sexual offenses"—were untrue. *Id*. See also *Rivera*, 40 NY3d at 317-318 (questioning the legal soundness of recidivism research at issue, but concluding that the question is not whether the legislation is the most effective way to accomplish the purpose, but is instead whether it is a rational means, which is essentially a legislative matter).

*Id.* at ___; slip op at 27.  Because they were "imposed on non-sexual offenders regardless of their risk of recidivism," they were excessive.  *Id.* at ___; slip op at 27-28.  The Supreme Court indicated that factor 5 weighed in favor of 2021 SORA being punishment.  *Id.* at ___; slip op at 30.

As *Lymon* recognized, the answer to this question may well differ when dealing with a convicted sex offender, like defendant.  Sexual offenders are still "branded dangerous sex offenders," and face the "demanding requirements and consequences" of the 2021 SORA.  *Id.* at ___; slip op at 26-27.  However, while denoting a non-sex offender as a "sex offender" is not accurate and contributes to it being excessive, the opposite is true for the individual who, like defendant, *has* committed a sex offense.  These less restrictive provisions under the 2021 SORA are a great deal less excessive when applied to sex offenders because they are precisely the offenders the Legislature established these regulations for in order to protect against future harm to victims, particularly the young and vulnerable.

It is important to remember that factor 5 "requires the Legislature to have made a '*reasonable*' choice; it does not require the Legislature to have 'made the best choice possible to address the problem it seeks to remedy.' "  *Id.* at ___; slip op at 24, quoting *Smith*, 538 US at 105 (emphasis added).  The 2021 SORA removed the student-safety zones, a key factor that had led to the *Betts* ruling of excessiveness.  *Betts*, 507 Mich at 566.  And the *Lymon* Court's consideration of this factor was heavily based on the restrictions being undeserved for non-sexual offenders.  *Lymon*, ___ Mich at ___; slip op at 26-27.[8]

These restrictions are not excessive when applied to the public safety concerns the statute addresses with respect to sex offenders.  In addressing a residency restriction in an Illinois sex offender statute, the Illinois Supreme Court aptly recounted how such statutory provisions are in line with the public safety goals of the statute:

> Plaintiff argues that the more restrictive provisions promote the traditional aims of punishment because they promote general deterrence through the threat of negative consequences, *i.e.*, living restrictions, presence restrictions, travel restrictions, loss of privacy, and humiliation.  However, "[a]ny number of governmental programs might deter crime without imposing punishment." *Smith*, 538 US at 102.  To hold that the presence of a deterrent purpose renders a restriction punishment " 'would severely undermine the [g]overnment's ability to engage in

---

[8] The main punishment concern in *Does #1–5 v Snyder*, 834 F3d 696 (CA 6, 2016), was also with the restrictive nature of the 1,000-foot limitation on where offenders could live or be located.  That court stressed the restrictive nature of this provision when finding several of the *Mendoza-Martinez* factors favored a finding that the 2011 SORA constitutes a punishment.  See *Does #1-5*, 834 F3d at 701-702 (finding the 1,000-foot school restriction similar to banishment in large part because it limits where an offender can live and work), 703 (considering the 1,000-foot restriction to be "most significant" in terms of a restraint on offenders, making it dissimilar to what was involved in *Smith*), and 705 (discussing the restriction in terms of excessiveness).  See *Does #1-7*, 945 F3d at 314 n 12 ("Especially important to the holding in Snyder was a provision that prohibited registered sex offenders from living, working, or loitering within 1,000 feet of a school zone.").

effective regulation.' " *Id*. (quoting *Hudson v United States*, 522 US 93, 105; 118 S Ct 488; 139 L Ed 2d 450 (1997)). Instead, the statutory scheme involving sex offenders and child sex offenders has a nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community and creating a buffer between sex offenders and congregations of children. [*Kopf*, 240 NE3d at 1129-1130.]

With respect to defendant's argument regarding research on the recidivism rate for sex offenders, we reiterate the very neutral position taken by the Supreme Court in its most recent description of this research as "a robust scientific debate [with] no universally accepted conclusion on the matters." *Lymon*, ___ Mich at ___; slip op at 26 n 18. The *Betts* Court stated that, "at minimum, the 2011 SORA's efficacy is unclear." *Betts*, 507 Mich at 561.[9] But whatever the recidivist rate for sex offenders (see note 6) is, with the removal of the most restrictive measures from the 2011 SORA, and viewing these restrictions as applied to defendant, a convicted sex offender, we conclude that the 2021 SORA is not excessive in light of the nonpunitive nature of the provisions. The statute no longer restricts where defendant can work or live, it does not require all reporting to be in-person, and the remaining restrictions afford police and the public with the tools to prevent, or at least detect, any future re-offending. See *Doe*, 696 SW3d at 332. Factor 5 weighs in favor of a finding that the restrictions are not punishment.

"At the end of the *Mendoza-Martinez* inquiry, this Court must answer whether defendant has demonstrated by 'the clearest proof' that the 2021 SORA 'is so punitive either in purpose or effect as to negate the State's intention to deem it civil.' " *Lymon*, ___ Mich at ___; slip op at 29-30, quoting *Hendricks*, 521 US at 361. Limiting the class of offender to those with CSC-I convictions, defendant has failed to carry that high burden.

We recognize that a federal district court located in Michigan recently came to the opposite conclusion. See *Does et al. v Whitmer, et al*., ___ F Supp 3d ___ (ED Mich, 2024) (Case No. 22-cv-10209). Although that court was addressing many more issues than are presented here, and had before it a plethora of differing classes of plaintiffs (including non-sex offenders), the court recognized some of the same points we have. For instance, the court recognized that there is no

---

[9] As for defendant's brief argument about the lack of individualized risk assessment, we simply quote the *Smith* Court's reasoned explanation for why one is not necessary:

> The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against *ex post facto* challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. As stated in *Hawker*: "Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character. But the legislature has power in cases of this kind to make a rule of universal application . . . ." The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause. [*Smith*, 538 US at 103-104 (citations omitted).]

unanimity in the literature on the efficacy of sex-offender registries on recidivism, *id*. at 32, and that SORA is rationally connected to a non-punitive purpose, *id*. at 37. But where we part ways with that court is it not giving the weight factor 4 is required to receive, and its conclusion that the amended 2021 SORA remains excessive. In our view, as explained above, a finding of a rational connection to a non-punitive purpose goes a long way under towards finding a regulation not being punishment, nor excessive. See *Smith*, 538 US at 103-104, *McGuire*, 50 F4th at 1015-1016, and *Doe*, 696 SW3d at 332. That conclusion, coupled with the lesser weighted findings for defendant under factors 1, 2 and 3 resulting both from the changes made to 2021 SORA and the fact we are dealing only with sex offenders, causes us to reach a different conclusion.

We hold that the 2021 SORA does not constitute punishment as applied to CSC-I offenders and, therefore, that there is no ex post facto violation.

Affirmed.

/s/ Christopher M. Murray
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado